**Olin BLANKS et al., Appellants,**

v.

**MIDSTATE CONSTRUCTORS, INC. et al., Appellees.**

No. 13338.

Court of Civil Appeals of Texas, Austin.

Dec. 17, 1980.

Rehearing Denied Jan. 14, 1981.

John A. Gilliam, Charles A. Gall, Jenkens & Gilchrist, Dallas, for appellants.

Robert L. Meyers, III, Robert W. Coleman, Meyers, Miller, Middleton, Weiner & Warren, Dallas, for appellees.

SHANNON, Justice.

This is an appeal from an order of the district court of Tom Green County refusing an application for temporary injunction.

Appellants, the Trustees of the Shannon West Texas Memorial Hospital, filed suit against appellees, Midstate Constructors, Inc., and Travelers Indemnity Company for breach of contract for the construction of a hospital in San Angelo. Appellants sought, among other things, a temporary injunction to prohibit Midstate from proceeding with its efforts to have all disputes between the parties submitted to arbitration before the American Arbitration Association. After hearing, the district court entered its order refusing the application for temporary injunction. This Court will affirm that judgment.

The construction contract provided, *inter alia*, that all disputes arising from breach of contract be submitted to arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, unless the parties mutually agreed otherwise. The parties here involved made no such agreement.

In May, 1980, a dispute arose between the parties with respect to progress payment requests submitted by Midstate. By early June, Midstate was advised that appellants had determined to terminate the contract. Thereafter, Midstate filed its demand for arbitration pursuant to the contract and 9 U.S.C. § 1 *et seq.*, the United States Arbitration Act. On or about June 9, appellants sent Midstate notice of termination of the contract, and on June 16, filed suit in district court.

The primary basis for the judgment of the trial court is that the contract between the parties involved commerce, and therefore the lawsuit was governed by the United States Arbitration Act, 9 U.S.C. § 1–14 (1976). For that reason, the district court denied appellants' application to enjoin Midstate from proceeding with arbitration.

Section 2 of the United States Arbitration Act provides that a written agreement to arbitrate in a "contract evidencing a transaction involving commerce shall be valid, irrevocable, and enforceable. . . ." "Commerce" is defined as ". . . commerce among the several states . . ." 9 U.S.C. § 1 (1976). If the Arbitration Act were applicable to the present controversy, the district court properly refused to enjoin Midstate from proceeding with arbitration.

In its judgment, the district court found, among other things, that appellants and Midstate entered into a contract which itself evidences a transaction involving interstate commerce. The court found further that the transaction in question shows substantial involvement with interstate commerce, whether considered from the point of view of the contract itself, or wholly apart from the contract. The district court concluded that the case was governed by the United States Arbitration Act.

Appellants' major complaint of the judgment is that the district court erred in finding that the transaction in question shows substantial involvement with interstate commerce. Appellants insist the the phrase "involving commerce," contained in the Arbitration Act, means "in commerce" and does not mean merely "affecting commerce." Therefore, appellants maintain that unless the transaction, which is the subject of the contract, is itself a transaction involving interstate commerce, the Arbitration Act is inapplicable. Appellants contend that the construction of a hospital in Texas is not itself a transaction in interstate commerce and the parties to the contract, therefore, are not subject to the Arbitration Act. Appellants place greatest reliance upon *Bryant-Durham Electric Company, Inc. v. Durham County Hospital Corporation*, 42 N.C.App. 351, 256 S.E.2d 529 (1979). This case will be discussed later in this opinion.

The parties were able to stipulate most of the facts. For example, there are specifications in the contract which require that Midstate use certain equipment, supplies and material "as manufactured by" or "equivalent to" goods manufactured by subcontractors and suppliers with addresses outside Texas. The addresses of many of the major suppliers are expressly listed in the specifications and several of them have out-of-state addresses. These and other suppliers shipped equipment, supplies and material directly from an address in a state other than Texas to the job site for use in construction of the hospital.

Midstate and some subcontractors transferred employees and equipment from other states to Texas for the purpose of constructing the hospital. Midstate mailed progress payments to subcontractors and payments to suppliers from its Texas office to certain out-of-state subcontractors and suppliers.

After April 1, 1979, all requests for payments in connection with the hospital job, except for subcontractors, were sent by Midstate to its home office in Binghamton, New York, for processing. Payments of such requests were mailed from Binghamton to these suppliers at addresses in Texas and at addresses in states other than Texas. After November, 1979, all requests for payment by subcontractors were sent by Midstate to its home office in Binghamton, and all payments made thereon were processed in and mailed from Binghamton, New York, to subcontractors at addresses in Texas and at addresses in states other than Texas. Prior to the dates specified above, pay requests and payments for suppliers and subcontractors were processed and mailed from Dallas, Texas.

In connection with the construction of the hospital, Midstate contracted with subcontractors and suppliers with addresses outside of Texas for work and material in amounts totaling not less than $1,000,-000.00.

At trial, appellees proved that the accounting for the project was done through Midstate's New York office. Also Midstate's project manager, superintendent, labor foreman, executive vice-president, and senior vice-president, all came from other states to work on the hospital project.

In *Bryant-Durham Electric Company, Inc. v. Durham County Hospital Corporation, supra,* the contract involved was one between two residents of North Carolina for construction of a hospital in Durham, North Carolina. In that case, the defendant sought to enforce an arbitration provision of the contract similar to that present here. Although the opinion in *Bryant-Durham* does not contain many facts pertaining to the performance of the contract, the Court of Appeals of North Carolina held that the contract was not one evidencing interstate commerce and, therefore, that the United States Arbitration Act did not apply. That court observed:

> "The movant contends that 9 U.S.C. § 2 should be given a broad interpretation so that it requires arbitration since some of the materials used by movant to perform the contract were shipped in interstate commerce. We note that if this is the proper interpretation of the Federal Arbitration Act there would be little need for the State to have adopted an arbitration act. Most contracts would be governed by the Federal Act. 9 U.S.C. § 2 provides that in order for it to govern there must be a contract 'evidencing a transaction involving commerce  . . . .' As we interpret this section the transaction which is the subject of the contract must be a transaction in interstate commerce. The construction of the Durham County General Hospital was not an act in interstate commerce and we hold the Federal Arbitration Act does not apply."

■ This Court declines to follow *Bryant-Durham Electric Company, Inc. v. Durham County Hospital Corporation, supra,* for the following reasons. The United States Arbitration Act has been held to be substantive rather than procedural, and equally applicable in state and federal courts. *Robert Lawrence Co., Inc. v. Devonshire Fabrics, Inc.,* 271 F.2d 402 (2d Cir. 1959), *cert. granted,* 362 U.S. 909, 80 S.Ct. 682, 4 L.Ed.2d 618, *dism'd under Rule 60,* 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960). Irrespective of state court decisions regarding the construction of arbitration clauses, all such clauses in contracts subject to the United States Arbitration Act must be interpreted in light of federal case law. *Metro Industrial Painting Corp. v. Terminal Construction Co.,* 287 F.2d 382, 386 (2d Cir. 1961), *cert. denied,* 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed.2d 24 (1961). Texas courts have recognized and followed this principle. *White-Weld & Co., Inc. v. Mosser,* 587 S.W.2d 485 (Tex.Civ.App.1979, writ ref'd n. r. e.), *cert. denied,* 446 U.S. 966, 100 S.Ct. 2943, 64 L.Ed.2d 825 (1980); *Miller v. Puritan Fashions Corporation,* 516 S.W.2d 234 (Tex.Civ.App.1974, writ ref'd n. r. e.); *Mamlin v. Susan Thomas, Incorporated,* 490 S.W.2d 634 (Tex.Civ.App.1973, no writ).

Under fairly similar facts, several United States Courts of Appeals have held such transactions as "involving commerce." In *Metro Industrial Painting Corp. v. Terminal Construction Co., supra,* a subcontract to construct a housing project at a military base in Florida was involved. The parties to the contract were a New York corporation, a co-partnership whose members were residents of New York, and a corporate joint-venture between New Jersey and Connecticut corporations, both authorized to do business in New York. Many interstate elements similar to the case at bar were involved in the performance of the contract. Twenty percent of the work force along with some supervisors were sent from New York to the job in Florida. Materials used by the subcontractor were purchased in other states, and many of the other subcontractors were from out-of-state. The court observed that although diversity between the parties existed, diversity of citizenship alone was not sufficient to compel arbitration under the Act, and that the contract in which the arbitration clause was included must be one "evidencing a transaction involving commerce." The court concluded, under the facts, that "the transaction evi-

denced by the contract thus clearly involved commerce."

Likewise, the Court of Appeals for the 5th Circuit in *Electronic & Missile Facilities, Inc. v. United States*, 306 F.2d 554 (5th Cir. 1962), *rev'd on other grounds sub-nom., Mosley v. Electronic & Missile Facilities, Inc.*, 374 U.S. 167, 83 S.Ct. 1815, 10 L.Ed.2d 818 (1963), held under similar facts that the contract there considered evidenced a transaction involving commerce. The facts in that case showed diversity of citizenship as well as the fact that supervisory personnel were transferred from other states, that supplies and equipment were sent across state lines to the project, that several out-of-state subcontractors were used, and that the facility under construction was a part of an interstate system of defense.

This Court has concluded under the facts of this case that the contract in question evidenced a transaction "involving commerce" in view of the interstate flow of materials, supplies, services, and personnel in connection with the construction of the project. It is true that no diversity of citizenship exists, but diversity is not all-determinative. *Metro Industrial Painting Corp. v. Terminal Construction Co., supra.*

Appellants' other complaint is that the district court erred in holding that Midstate had not waived its right of arbitration by breaching the contract. Appellants' contention is that Midstate removed its workmen and equipment from the job on May 27, 1980, and that nothing further was done by Midstate toward completion of the project. As basis for their complaint, appellants rely upon § 7.10.03 of the General Conditions of the contract:

> "The contract shall carry on the work and maintain the progress schedule during any arbitration proceedings, unless otherwise agreed by him and the Owner in writing."

Appellants produced evidence that tended to show that Midstate pulled its workmen and equipment off the job on May 27, 1980. Nevertheless, appellants' own witness, Vic Eckert, admitted to the contrary. He testi-fied that several of Midstate's subcontractors continued work on the job until June 9, 1980, at which time appellants terminated the contract. The district court was not convinced by the proof that Midstate had effected a waiver of its right to arbitrate. Under these circumstances, the order of the district court will be affirmed.

The order of the district court is affirmed.

SMITH, J., not sitting.