**LOST CREEK MUNICIPAL UTILITY DISTRICT, Appellant,**

v.

**TRAVIS INDUSTRIAL PAINTERS, INC., Appellee.**

No. 3–91–322–CV.

Court of Appeals of Texas, Austin.

April 1, 1992.

Rehearing Overruled April 22, 1992.

Ralph A. Rash, Rash, Laney, Chapman & Schreiber, Austin, for appellant.

William W. Sommers, Gardner & Ferguson, Inc., San Antonio, for appellee.

Before CARROLL, C.J., and ABOUSSIE and B.A. SMITH, JJ.

B.A. SMITH, Justice.

This appeal presents the question of whether a warranty dispute between a contractor and an owner is subject to mandatory arbitration under the terms of the parties' contract. The trial court found a duty to arbitrate under the agreement and denied appellant's request for a temporary injunction of pending arbitration proceedings. The court abated the law suit and referred the dispute to arbitration. Appellant challenges this interlocutory order pursuant to Tex.Civ.Prac. & Rem.Code Ann. § 51.014 (1986 & Supp.1992). We will affirm the trial court's order.

## I. BACKGROUND

Lost Creek Municipal Utility District (Lost Creek) hired Travis Industrial Painters, Inc. (Travis) to paint the interior of its water reservoir. Under the contract, Travis warranted that its work would be free of defects in material and workmanship for two years. Travis completed the painting and received final payment under the contract in May 1988.

In December 1988, Lost Creek discovered leaks in the interior coating of its reservoir and demanded that Travis correct its work. Travis performed the corrective painting under protest in early 1989. When it was later discovered that the defects in the interior coating of the reservoir were possibly caused by a faulty cathodic-protection system, rather than by defects in its workmanship or materials, Travis sought to recover the $24,000 cost of its corrective repainting. Lost Creek denied the claim and Travis filed a demand for arbitration with the American Arbitration Association, the third party designated in the parties' agreement.

Lost Creek sought to enjoin the arbitration proceeding. In February 1991, the trial court denied a temporary injunction and granted Travis' plea in abatement. Lost Creek objected to the trial court's order and another hearing was held before the court entered its final order in July 1991.

Travis argues that this dispute is subject to arbitration under the general contract provision that "all claims, disputes and other matters in question between Owner and Contractor arising out of, or relating to the contract documents or the breach thereof ... will be decided by arbitration." Lost Creek focuses on language in the same article excepting from arbitration "claims which have been waived by the making or acceptance of final payment." Lost Creek relies on this language to argue that, after Travis accepted payment for the completed work in May 1988, all disputes arising under the warranty provisions of the contract were excepted from compulsory arbitration. The trial court found the dispute arbitrable under the contract.

## II. DISCUSSION

In three points of error Lost Creek argues that the trial court erred: (1) in determining that this dispute was subject to mandatory arbitration; (2) in applying federal rather than state law governing arbitration; and (3) in entering findings of fact and conclusions of law that are not supported by any evidence.

### A. Federal or State Law?

 In order to determine the applicable law governing this dispute, we will first address the second point of error. Lost Creek complains that the trial court erred

in concluding that this contract is governed by the Federal Arbitration Act, 9 U.S.C.A. § 1–16 (West 1970 & Supp.1991), and the federal case law interpreting the Act. Lost Creek argues that the following facts are insufficient to constitute interstate commerce and therefore subject this agreement to federal law: (1) the paint and epoxy Travis used to paint Lost Creek's reservoir were manufactured outside of Texas; and (2) the contractor's performance bond was given by a surety company headquartered in another state. The trial court found that the contract involved interstate commerce and, therefore, was governed by federal law. We agree.

In *Blanks v. Midstate Constructors, Inc.*, 610 S.W.2d 220 (Tex.Civ.App.1980, writ ref'd n.r.e.), this Court upheld a similar decision finding an arbitration clause enforceable under the Federal Arbitration Act. In that case the construction of a hospital in Tom Green County involved the transfer of employees, supplies, material and equipment from other states. We declined to follow the lead of a North Carolina case which had found "some transactions" in interstate commerce insufficient to invoke federal law. *See Bryant–Durham Elec. Co. v. Durham County Hosp. Corp.*, 42 N.C.App. 351, 256 S.E.2d 529 (1979). Instead, we interpreted the act broadly, determining that the contract evidenced a transaction involving commerce and, therefore, the Federal Arbitration Act applied. *Blanks*, 610 S.W.2d at 223.

■ Here there is no transfer of employees between states, only material (paint and epoxy) and the all-important surety bond of the contractor. However, "commerce" under the Federal Arbitration Act must be broadly construed. *Snyder v. Smith*, 736 F.2d 409, 417 (7th Cir.1984) *cert. denied*, 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403. It is not limited to interstate shipment of goods, but also includes all contracts relating to interstate commerce. *Prima Paint v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 n. 7, 87 S.Ct. 1801, 1805 n. 7, 18 L.Ed.2d 1270 (1967); *Mesa Operating Ltd. Partnership v. Louisiana Intrastate Gas Corp.*, 797 F.2d 238, 243 (5th Cir.1986). Moreover, the amount of commerce considered in the contract need not be substantial. As long as a contract relates to interstate commerce, the Federal Arbitration Act is implicated. *Del E. Webb Const. v. Richardson Hosp. Auth.*, 823 F.2d 145, 148 (5th Cir.1987). This standard implements the strong federal policy favoring arbitration. *Id.* Therefore, we believe that the principle announced in *Blanks* reaches the fact situation before us today and we decline to disturb the trial court's finding that the agreement evidences a transaction involving interstate commerce. We overrule the second point of error.

### B. Duty to Arbitrate

■ Whether the parties' agreement imposes a duty to arbitrate this warranty dispute is a question for the court to determine. *AT & T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418–19, 89 L.Ed.2d 648 (1986). Arbitration is a matter of contract; a party cannot be required to submit to arbitration unless it agreed in advance that the dispute would be arbitrated. *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960). A broad arbitration clause such as this one, purporting to cover all claims, disputes and other matters relating to the contract or its breach, creates a presumption of arbitrability. *AT & T Technologies*, 475 U.S. at 650, 106 S.Ct. at 1419. "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Warrior & Gulf*, 363 U.S. at 582–83, 80 S.Ct. at 1353.

The question in this case is whether the language excluding from arbitration "all claims which have been waived by the acceptance of final payment" exempts this warranty dispute from arbitration. Lost Creek argues that it does. If Lost Creek is correct, the agreement effectively excludes from arbitration every warranty dispute, as

these will almost always arise after the contractor has accepted final payment.

 There is simply no evidence that the parties intended that disputes arising from the warranty provisions of the agreement would be litigated, while all other disputes arising out of their contractual relationship would be arbitrated. If the parties had so intended, they could have expressly excluded warranty disputes from arbitration. They did not. "In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT & T Technologies*, 475 U.S. at 650, 106 S.Ct. at 1419 (quoting *Warrior & Gulf*, 363 U.S. at 584–85, 80 S.Ct. at 1354).

We must resolve any doubts concerning the scope of coverage of an arbitration clause in a contract in favor of arbitration. *Warrior & Gulf*, 363 U.S. at 582–83, 80 S.Ct. at 1352–53. The exclusionary language that Lost Creek relies on in this agreement can be interpreted to require arbitration. We read the exception to exclude arbitration only after an *existing* dispute has been resolved by the acceptance of final payment, without affecting the arbitrability of *future* disputes that have not yet arisen. By accepting payment in full for the work done under the contract, Travis waived the right to have arbitrated any disputes regarding the sum of money due for that work. It did not waive the right to have arbitrated all future warranty disputes. It defies common sense to suggest that the contractor who accepts payment at the completion of a job knowingly waives the right to arbitrate future disputes, as yet unknown, that may arise over what is or is not covered by the warranty agreement.

In light of the presumption favoring arbitration and the lack of any evidence that these parties intended to exclude warranty disputes from arbitration, the trial court properly resolved any doubt regarding coverage in favor of arbitration and properly interpreted the exclusionary language in a manner consistent with coverage. Because we concur that the agreement between Lost Creek and Travis imposed a duty to arbitrate this dispute, we overrule the first point of error.

## III. RECORD ON APPEAL

We understand from the parties that there is no continuing dispute about the state of the record on appeal and hence we overrule the third point of error.

## IV. CONCLUSION

Because we find no error, we affirm the trial court's order overruling the application for a temporary injunction, abating this court proceeding, and referring the parties' dispute to the pending arbitration proceeding.