BWI COMPANIES, INC., Relator

v.

The Honorable Dan R. BECK,
Respondent

and

BWI COMPANIES, INC., Appellant

v.

Patrick KURTENBACH, Appellee.

Nos. 03–95–00385–CV, 03–95–00204–CV.

Court of Appeals of Texas,
Austin.

Nov. 15, 1995.

R. Pepper Crutcher, Jr., Phelps Dunbar, Jackson, MS, Holly Murphy Claghorn, Matthews & Branscomb, P.C., Austin, for appellant.

Keith T. Lauerman, Austin, for appellee.

Before CARROLL, C.J., and JONES and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

In cause number 3–95–385–CV, Relator BWI Companies, Inc. seeks mandamus relief to enforce an arbitration agreement signed by Patrick Kurtenbach, the plaintiff and real party in interest in the proceeding below. Because we hold that Relator has established that the agreement is enforceable under the Federal Arbitration Act, and that Kurtenbach's claim falls under the agreement, we conditionally grant the relief requested. Because our resolution of the mandamus action renders moot the issues raised by the interlocutory appeal in cause number 3–95–204–CV, we dismiss that appeal.

## Background

BWI Companies is a wholesaler of landscaping and gardening supplies, with facilities in Texas and other states. BWI hired Kurtenbach as a driver to deliver supplies from its Schulenburg, Texas warehouse to customers in the Schulenburg area. In 1992, Kurtenbach agreed to resolve any future claims he might have against BWI through the arbitration procedure outlined in BWI's Private Dispute Process. In January 1993 BWI terminated Kurtenbach; the next year he filed a lawsuit against BWI claiming retaliatory discharge. Kurtenbach also initiated arbitration proceedings as contemplated by the Private Dispute Process.[1]

Based on Kurtenbach's agreement to resolve any dispute through arbitration, BWI filed a motion to dismiss or stay the trial court litigation. In its motion BWI asserted the applicability of both the Federal Arbitration Act (the "FAA") and the Texas General Arbitration Act (the "TGAA"). *See* 9 U.S.C. §§ 1–16 (1970); Tex.Rev.Civ.Stat.Ann. art. 224 (West Supp.1995). In response, Kurtenbach filed a motion to stay arbitration proceedings and to dismiss BWI's motion. In March 1995, the trial court issued an order granting Kurtenbach's motion. BWI attacks the court's order in parallel proceedings, seeking mandamus relief under the FAA and bringing an interlocutory appeal under the TGAA. *See Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex.1992) (litigants asserting applicability of TGAA must pursue interlocutory appeal of trial court's order; enforcement of arbitration under FAA must be pursued through writ of mandamus).

## Discussion and Holding

 Under the supremacy clause of the United States Constitution, the FAA preempts all otherwise applicable state laws, including the TGAA. U.S. Const. art. VI. cl. 2; *Anglin*, 842 S.W.2d at 266. We first determine whether the FAA governs Kurtenbach's disputed claims. Under the FAA, which applies to transactions "involving commerce," an arbitration agreement must be enforced upon proof that a written agreement exists and that the claims raised are within the scope of the agreement. *Capital*

---

1. Kurtenbach states that he filed his arbitration claim for the sole purpose of preventing its expiration under the statute of limitations, in the event that he was forced to arbitration. He argues that he therefore did not "commence" arbitration proceedings. Kurtenbach essentially claims that proceedings are "commenced" for the purpose of limitations, but not for any other purpose. We reject this distinction; Kurtenbach commenced arbitration proceedings for all purposes when he filed his claim form.

*Income Properties v. Blackmon,* 843 S.W.2d 22, 23 (Tex.1992).

At the outset, Kurtenbach observes that *Anglin* addressed the procedure appropriate to attack an order granting or denying a motion to compel arbitration. *Anglin,* 842 S.W.2d at 271–72. Kurtenbach asserts that because BWI did not file a motion to compel, mandamus is not an appropriate remedy. This argument rests on an overly technical reading of *Anglin*'s guidelines. *Anglin* holds that when a party is denied the benefit of an arbitration agreement, mandamus is the appropriate remedy to enforce the agreement under the FAA. *Blackmon,* 843 S.W.2d at 23. The trial court's order in this case prevents any effort by BWI to invoke the arbitration process; BWI has effectively been denied the benefit of its arbitration agreement. Furthermore, the procedural posture of the case is just as if a motion to compel arbitration had been denied. BWI has properly sought a remedy under the FAA by writ of mandamus. *Anglin,* 842 S.W.2d at 272.

■ Kurtenbach next claims that the arbitration agreement is not within the scope of the FAA, or alternatively that he falls within a class of persons exempted from the federal statute. We address the latter contention first. Section 1 of the FAA states that the act does not apply "to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1 (1970). This provision has been interpreted to exempt workers actually in the transportation industry, or workers engaged in actual movement of goods in interstate commerce. *Hampton v. ITT Corp.,* 829 F.Supp. 202, 203 (S.D.Tex.1993); *White–Weld & Co. Inc. v. Mosser,* 587 S.W.2d 485, 487 (Tex Civ.App.—Dallas 1979, writ ref'd n.r.e.), *cert. denied,* 446 U.S. 966, 100 S.Ct. 2943, 64 L.Ed.2d 825 (1980). The evidence presented to the court below establishes that BWI sells gardening and landscaping equipment, and that Kurtenbach worked for BWI. This evidence shows that Kurtenbach is involved in the landscaping and gardening supply business, not the transportation industry. Furthermore, no evidence was presented to the trial court suggesting that Kurtenbach engaged in the actual movement of goods in interstate commerce. In sum, no evidence was presented to the trial court placing Kurtenbach within the exemptions outlined in section 1.

■ Kurtenbach relies on section 2 of the Act to assert that his agreement with BWI is beyond the scope of the FAA. Section 2 provides:

A written provision in … a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (1970). Kurtenbach interprets this provision to require his arbitration agreement to be part of a larger contract which evidences a transaction involving commerce. We disagree. "The creation of an employment relationship which involved commerce is a sufficient 'transaction' to fall within section 2 of the Act." *Mosser,* 587 S.W.2d at 487 (citing *Dickstein v. du Pont,* 443 F.2d 783, 785 (1st Cir.1971)). If Kurtenbach's employment relationship involves "commerce" within the meaning of section 2, then the FAA governs the arbitration agreement.

■ This Court has concluded that "commerce" under the FAA must be broadly construed. *Lost Creek Municipal Util. District v. Travis Indus. Painters,* 827 S.W.2d 103, 105 (Tex.App.—Austin 1992, writ denied). If the transaction at issue relates to interstate commerce, the FAA is implicated. *Id.* Because Congress intended that the FAA govern arbitration agreements within the reach of the Commerce Clause, we construe "commerce" as coextensive with congressional authority to regulate under the Commerce Clause. *See Perry v. Thomas,* 482 U.S. 483, 490, 107 S.Ct. 2520, 2525–26, 96 L.Ed.2d 426 (1987); *Prima Paint v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 401 n. 7, 87 S.Ct. 1801, 1805 n. 7, 18 L.Ed.2d 1270 (1967); *Foster v. Turley,* 808 F.2d 38, 40 (10th Cir. 1986).

According to undisputed evidence presented to the trial court, BWI has its headquarters in Texarkana, Texas, and maintains op-

erations in Alabama, Louisiana, Mississippi, Missouri, Tennessee, and Texas. The evidence also shows that BWI delivers its products across state lines in the course of its sales. "No commercial enterprise of any kind which conducts its activities across state lines has been held to be wholly beyond the regulatory power of Congress under the Commerce Clause." *United States v. South–Eastern Underwriters Ass'n,* 322 U.S. 533, 553, 64 S.Ct. 1162, 1173–74, 88 L.Ed. 1440 (1944). Because BWI's business operations fall within the scope of Congress' regulatory power under the Commerce Clause, BWI's relationship with its employees involves "commerce" as that term is used in the FAA. It follows that Kurtenbach's relationship with BWI involves commerce within the meaning of the FAA; the arbitration agreement therefore is enforceable under the federal statute.

■ Kurtenbach argues that, notwithstanding the enforceability of the agreement under the FAA, it does not apply to his retaliatory discharge claim. BWI's Private Dispute Process defines its scope in the following terms:

> Any employee who participates in this process (called a "participant") may use it to resolve any employment-related legal dispute with BWI, including any legal claim against a supervisor or manager arising from the performance of his or her job. This includes all claims which a participant may have under state or federal law.

Because he has been terminated, Kurtenbach argues that he is no longer an employee and no longer a participant in the arbitration process. Kurtenbach further alleges that he seeks damages that were sustained because his employment with BWI ceased, placing his claim outside the scope of the arbitration agreement. We disagree. If the agreement governed only present employees, it would never cover any employment-related dispute involving a discharge or termination. By its own terms, the Private Dispute Process purports to cover "all claims which a participant may have under state or federal law." The term "employee" used in the rules describes Kurtenbach's status at the time he agreed to be bound by the arbitration procedure.

The Supreme Court has held that in "the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986). Our review of the record reveals no such evidence reflecting an intent to exclude post-employment claims generally, or the claim of retaliatory discharge specifically from the arbitration process. Furthermore, the plain language of the agreement signed by Kurtenbach states that he would submit "any and all" claims against BWI to arbitration. We therefore hold that pursuant to the agreement, Kurtenbach's claim is subject to arbitration.

■ Kurtenbach also asserts that the following passage in the Private Dispute Process rules makes the arbitration process optional: "Any employee who participates in this process (called a "participant") *may* use it to resolve any employment-related legal dispute . . . ." Analogizing to rules of statutory construction, Kurtenbach urges that the term "may" should be construed as directory or permissive language. *See Valles v. Texas Comm'n on Jail Standards,* 845 S.W.2d 284, 288 (Tex.App.—Austin 1992, writ denied) (use of term "may" in statute usually construed as directory or permissive). In "determining whether the Legislature intended the particular provision to be mandatory or merely directory, consideration should be given to the entire act, its nature and objectives, and the consequences that would follow from each construction." *Inwood North Homeowners' Ass'n v. Meier,* 625 S.W.2d 742, 743 (Tex.Civ.App.—Houston 1981, no writ) (citing *Chisholm v. Bewley Mills,* 287 S.W.2d 943, 945 (Tex.1956)). According to this rule, the use of the word "may" does not in itself render the arbitration procedure optional to Kurtenbach; we must look at the entire agreement, its purpose, and the consequence of construing the agreement as either mandatory or permissive.

Viewing the agreement as a whole, we note that Kurtenbach agreed to resolve "any and all claims" which he "may have against BWI,

its supervisors or managers" through the arbitration process; the agreement acknowledged that he would "submit all disputes" with BWI to arbitration. This broad language appears to foreclose any option of resolving disputes outside arbitration. Also, the rules provide for a penalty if a participant files a lawsuit alleging a claim that is subject to arbitration; the rules would not impose this penalty if arbitration were optional to the participant.

We next consider the consequence of construing the agreement as mandatory or permissive. In construing the language of an arbitration clause, we employ a heavy presumption in favor of arbitration. *Babcock & Wilcox Co. v. PMAC, Ltd.,* 863 S.W.2d 225, 230 (Tex.App.—Houston [14th Dist.] 1993, writ denied). This presumption requires us to decide any reasonably debatable question of interpretation in favor of arbitration. *Id.* Construing the term "may" as rendering arbitration optional would go against this rule of interpretation. Finally, we note that the purpose of an arbitration agreement is to provide a rapid, inexpensive alternative to traditional litigation. *Anglin,* 842 S.W.2d at 272–73. This purpose would certainly be defeated if we construed the arbitration agreement as optional to Kurtenbach.

Based on our consideration of the factors outlined in *Inwood* and the sweeping language of the arbitration agreement, we conclude that the term "may" in the rules was not used in the permissive sense. The Private Dispute Process is therefore not optional to Kurtenbach; any dispute he has with BWI must be resolved through arbitration.

### Conclusion

Because we hold that Kurtenbach's claim against BWI is arbitrable according to the arbitration agreement, and because the agreement is enforceable under the Federal Arbitration Act, we conditionally grant the writ of mandamus. We direct the trial court to order that Kurtenbach's claim proceed to arbitration under the Federal Arbitration Act. The clerk is instructed to issue the writ only should the trial court fail to do so.

Because the arbitration agreement is enforceable under the Federal Arbitration Act, we do not reach the issues raised in the interlocutory appeal concerning the applicability of the Texas General Arbitration Act. Because the applicability of the Texas Act is a moot issue, we dismiss the interlocutory appeal.