BWI 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00385-CV







BWI Companies, Inc., Relator



v.



The Honorable Dan R. Beck, Respondent



&








NO. 03-95-00204-CV







BWI Companies, Inc., Appellant



v.



Patrick Kurtenbach, Appellee








FROM THE DISTRICT COURT OF FAYETTE COUNTY, 155TH JUDICIAL DISTRICT


NO. 94V-160, HONORABLE DAN R. BECK, JUDGE PRESIDING







 In cause number 3-95-385-CV, Relator BWI Companies, Inc. seeks mandamus
relief to enforce an arbitration agreement signed by Patrick Kurtenbach, the plaintiff and real party
in interest in the proceeding below. Because we hold that Relator has established that the
agreement is enforceable under the Federal Arbitration Act, and that Kurtenbach's claim falls
under the agreement, we conditionally grant the relief requested. Because our resolution of the
mandamus action renders moot the issues raised by the interlocutory appeal in cause number 3-95-204-CV, we dismiss that appeal.



 Background


 BWI Companies is a wholesaler of landscaping and gardening supplies, with
facilities in Texas and other states. BWI hired Kurtenbach as a driver to deliver supplies from
its Schulenburg, Texas warehouse to customers in the Schulenburg area. In 1992, Kurtenbach
agreed to resolve any future claims he might have against BWI through the arbitration procedure
outlined in BWI's Private Dispute Process. In January 1993 BWI terminated Kurtenbach; the next
year he filed a lawsuit against BWI claiming retaliatory discharge. Kurtenbach also initiated
arbitration proceedings as contemplated by the Private Dispute Process. (1) 

 Based on Kurtenbach's agreement to resolve any dispute through arbitration, BWI
filed a motion to dismiss or stay the trial court litigation. In its motion BWI asserted the
applicability of both the Federal Arbitration Act (the "FAA") and the Texas General Arbitration
Act (the "TGAA"). See 9 U.S.C. §§ 1-16 (1970); Tex. Rev. Civ. Stat. Ann. art. 224 (West
Supp. 1995). In response, Kurtenbach filed a motion to stay arbitration proceedings and to
dismiss BWI's motion. In March 1995, the trial court issued an order granting Kurtenbach's
motion. BWI attacks the court's order in parallel proceedings, seeking mandamus relief under
the FAA and bringing an interlocutory appeal under the TGAA. See Jack B. Anglin Co. v. Tipps,
842 S.W.2d 266, 272 (Tex. 1992) (litigants asserting applicability of TGAA must pursue
interlocutory appeal of trial court's order; enforcement of arbitration under FAA must be pursued
through writ of mandamus). 



Discussion and Holding


 Under the supremacy clause of the United States Constitution, the FAA preempts
all otherwise applicable state laws, including the TGAA. U.S. Const. art. VI. cl. 2; Anglin, 842
S.W.2d at 266. We first determine whether the FAA governs Kurtenbach's disputed claims. 
Under the FAA, which applies to transactions "involving commerce," an arbitration agreement
must be enforced upon proof that a written agreement exists and that the claims raised are within
the scope of the agreement. Capital Income Properties v. Blackmon, 843 S.W.2d 22, 23 (Tex.
1992). 

 At the outset, Kurtenbach observes that Anglin addressed the procedure appropriate
to attack an order granting or denying a motion to compel arbitration. Anglin, 842 S.W.2d at
271-72. Kurtenbach asserts that because BWI did not file a motion to compel, mandamus is not
an appropriate remedy. This argument rests on an overly technical reading of Anglin's guidelines. 
Anglin holds that when a party is denied the benefit of an arbitration agreement, mandamus is the
appropriate remedy to enforce the agreement under the FAA. Blackmon, 843 S.W.2d at 23. The
trial court's order in this case prevents any effort by BWI to invoke the arbitration process; BWI
has effectively been denied the benefit of its arbitration agreement. Furthermore, the procedural
posture of the case is just as if a motion to compel arbitration had been denied. BWI has properly
sought a remedy under the FAA by writ of mandamus. Anglin, 842 S.W.2d at 272. 

 Kurtenbach next claims that the arbitration agreement is not within the scope of the
FAA, or alternatively that he falls within a class of persons exempted from the federal statute. 
We address the latter contention first. Section 1 of the FAA states that the act does not apply "to
contracts of employment of seamen, railroad employees, or any other class of workers engaged
in foreign or interstate commerce." 9 U.S.C. § 1 (1970). This provision has been interpreted to
exempt workers actually in the transportation industry, or workers engaged in actual movement
of goods in interstate commerce. Hampton v. ITT Corp., 829 F.Supp. 202, 203 (S.D.Tex. 1993);
White-Weld & Co. Inc. v. Mosser, 587 S.W.2d 485, 487 (Tex Civ. App.--Dallas 1979, writ ref'd
n.r.e.), cert. denied, 446 U.S. 966 (1980). The evidence presented to the court below establishes
that BWI sells gardening and landscaping equipment, and that Kurtenbach worked for BWI. This
evidence shows that Kurtenbach is involved in the landscaping and gardening supply business, not
the transportation industry. Furthermore, no evidence was presented to the trial court suggesting
that Kurtenbach engaged in the actual movement of goods in interstate commerce. In sum, no
evidence was presented to the trial court placing Kurtenbach within the exemptions outlined in
section 1. 

 Kurtenbach relies on section 2 of the Act to assert that his agreement with BWI is
beyond the scope of the FAA. Section 2 provides:



A written provision in . . . a contract evidencing a transaction involving commerce
to settle by arbitration a controversy thereafter arising out of such contract or
transaction . . . shall be valid, irrevocable, and enforceable, save upon such
grounds as exist at law or in equity for the revocation of any contract.



9 U.S.C. § 2 (1970). Kurtenbach interprets this provision to require his arbitration agreement to
be part of a larger contract which evidences a transaction involving commerce. We disagree. 
"The creation of an employment relationship which involved commerce is a sufficient
`transaction' to fall within section 2 of the Act." Mosser, 587 S.W.2d at 487 (citing Dickstein
v. du Pont, 443 F.2d 783, 785 (1st Cir. 1971)). If Kurtenbach's employment relationship
involves "commerce" within the meaning of section 2, then the FAA governs the arbitration
agreement. 

 This Court has concluded that "commerce" under the FAA must be broadly
construed. Lost Creek Util. v. Travis Indus. Painters, 827 S.W.2d 103, 105 (Tex. App.--Austin
1992, writ denied). If the transaction at issue relates to interstate commerce, the FAA is
implicated. Id. Because Congress intended that the FAA govern arbitration agreements within
the reach of the Commerce Clause, we construe "commerce" as coextensive with congressional
authority to regulate under the Commerce Clause. See Perry v. Thomas, 482 U.S. 483, 490
(1987); Prima Paint v. Flood & Conklin Mfg. Co., 388 U.S. 395, 401 n.7 (1967); Foster v.
Turley, 808 F.2d 38, 40 (10th Cir. 1986). 

 According to undisputed evidence presented to the trial court, BWI has its
headquarters in Texarkana, Texas, and maintains operations in Alabama, Louisiana, Mississippi,
Missouri, Tennessee, and Texas. The evidence also shows that BWI delivers its products across
state lines in the course of its sales. "No commercial enterprise of any kind which conducts its
activities across state lines has been held to be wholly beyond the regulatory power of Congress
under the Commerce Clause." United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533,
553 (1944). Because BWI's business operations fall within the scope of Congress' regulatory
power under the Commerce Clause, BWI's relationship with its employees involves "commerce"
as that term is used in the FAA. It follows that Kurtenbach's relationship with BWI involves
commerce within the meaning of the FAA; the arbitration agreement therefore is enforceable
under the federal statute.

 Kurtenbach argues that, notwithstanding the enforceability of the agreement under
the FAA, it does not apply to his retaliatory discharge claim. BWI's Private Dispute Process
defines its scope in the following terms:



Any employee who participates in this process (called a "participant") may use it
to resolve any employment-related legal dispute with BWI, including any legal
claim against a supervisor or manager arising from the performance of his or her
job. This includes all claims which a participant may have under state or federal
law.



Because he has been terminated, Kurtenbach argues that he is no longer an employee and no
longer a participant in the arbitration process. Kurtenbach further alleges that he seeks damages
that were sustained because his employment with BWI ceased, placing his claim outside the scope
of the arbitration agreement. We disagree. If the agreement governed only present employees,
it would never cover any employment-related dispute involving a discharge or termination. By
its own terms, the Private Dispute Process purports to cover "all claims which a participant may
have under state or federal law." The term "employee" used in the rules describes Kurtenbach's
status at the time he agreed to be bound by the arbitration procedure.

 The Supreme Court has held that in "the absence of any express provision
excluding a particular grievance from arbitration, we think only the most forceful evidence of a
purpose to exclude the claim from arbitration can prevail." AT&T Technologies, Inc. v.
Communication Workers of America, 475 U.S. 643, 650 (1986). Our review of the record reveals
no such evidence reflecting an intent to exclude post-employment claims generally, or the claim
of retaliatory discharge specifically from the arbitration process. Furthermore, the plain language
of the agreement signed by Kurtenbach states that he would submit "any and all" claims against
BWI to arbitration. We therefore hold that pursuant to the agreement, Kurtenbach's claim is
subject to arbitration. 

 Kurtenbach also asserts that the following passage in the Private Dispute Process
rules makes the arbitration process optional: "Any employee who participates in this process
(called a "participant") may use it to resolve any employment-related legal dispute . . . ." 
Analogizing to rules of statutory construction, Kurtenbach urges that the term "may" should be
construed as directory or permissive language. See Valles v. Texas Comm'n on Jail Standards,
845 S.W.2d 284, 288 (Tex. App.--Austin 1992, writ denied) (use of term "may" in statute usually
construed as directory or permissive). In "determining whether the Legislature intended the
particular provision to be mandatory or merely directory, consideration should be given to the
entire act, its nature and objectives, and the consequences that would follow from each
construction." Inwood North Homeowners' Ass'n v. Meier, 625 S.W.2d 742, 743 (Tex. Civ.
App.--Dallas 1981, no writ) (citing Chisholm v. Bewley Mills, 287 S.W.2d 943, 945 (Tex. 1956)). 
According to this rule, the use of the word "may" does not in itself render the arbitration
procedure optional to Kurtenbach; we must look at the entire agreement, its purpose, and the
consequence of construing the agreement as either mandatory or permissive.

 Viewing the agreement as a whole, we note that Kurtenbach agreed to resolve
"any and all claims" which he "may have against BWI, its supervisors or managers" through the
arbitration process; the agreement acknowledged that he would "submit all disputes" with BWI
to arbitration. This broad language appears to foreclose any option of resolving disputes outside
arbitration. Also, the rules provide for a penalty if a participant files a lawsuit alleging a claim
that is subject to arbitration; the rules would not impose this penalty if arbitration were optional
to the participant. 

 We next consider the consequence of construing the agreement as mandatory or
permissive. In construing the language of an arbitration clause, we employ a heavy presumption
in favor of arbitration. Babcock & Wilcox Co. v. PMAC, LTD., 863 S.W.2d 225, 230 (Tex.
App.--Houston [14th Dist.] 1993, writ denied). This presumption requires us to decide any
reasonably debatable question of interpretation in favor of arbitration. Id. Construing the term
"may" as rendering arbitration optional would go against this rule of interpretation. Finally, we
note that the purpose of an arbitration agreement is to provide a rapid, inexpensive alternative to
traditional litigation. Anglin, 842 S.W.2d at 272-73. This purpose would certainly be defeated
if we construed the arbitration agreement as optional to Kurtenbach. 

 Based on our consideration of the factors outlined in Inwood and the sweeping
language of the arbitration agreement, we conclude that the term "may" in the rules was not used
in the permissive sense. The Private Dispute Process is therefore not optional to Kurtenbach; any
dispute he has with BWI must be resolved through arbitration.



Conclusion


 Because we hold that Kurtenbach's claim against BWI is arbitrable according to the
arbitration agreement, and because the agreement is enforceable under the Federal Arbitration
Act, we conditionally grant the writ of mandamus. We direct the trial court to order that
Kurtenbach's claim proceed to arbitration under the Federal Arbitration Act. The clerk is
instructed to issue the writ only should the trial court fail to do so.

 Because the arbitration agreement is enforceable under the Federal Arbitration Act,
we do not reach the issues raised in the interlocutory appeal concerning the applicability of the
Texas General Arbitration Act. Because the applicability of the Texas Act is a moot issue, we
dismiss the interlocutory appeal. 



 

 Bea Ann Smith, Justice

Before Chief Justice Carroll, Justices Jones and B. A. Smith

Writ of Mandamus Conditionally Granted in Cause No. 03-95-00385-CV;

Interlocutory Appeal Dismissed in Cause No. 03-95-00204-CV

Filed: November 15, 1995 

Publish
1.   Kurtenbach states that he filed his arbitration claim for the sole purpose of
preventing its expiration under the statute of limitations, in the event that he was forced
to arbitration. He argues that he therefore did not "commence" arbitration proceedings. 
Kurtenbach essentially claims that proceedings are "commenced" for the purpose of
limitations, but not for any other purpose. We reject this distinction; Kurtenbach
commenced arbitration proceedings for all purposes when he filed his claim form.