

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## NUMBER 13-09-00119-CV

**MAVERICK ENGINEERING, INC.,**                                    **Appellant,**

**v.**

**GOVIND NADKARNI,**                                             **Appellee.**

On appeal from the 214th District Court of Nueces County, Texas.

## NUMBER 13-09-00142-CV

## IN RE: MAVERICK ENGINEERING, INC.

On Petition for Writ of Mandamus

# MEMORANDUM OPINION

**Before Justices Yañez, Rodriguez, and Benavides**
**Memorandum Opinion by Justice Benavides**

Relator, Maverick Engineering, Inc., ("Maverick"), filed a petition for writ of mandamus and an interlocutory appeal through which it contends that the trial court erred in failing to submit the underlying dispute to arbitration. We dismiss the appeal and conditionally grant the petition for writ of mandamus as stated herein.

## I. BACKGROUND

Maverick purchased Govind Nadkarni's engineering businesses and agreed to employ Nadkarni through three separate contracts. These contracts are: (1) an Asset Purchase Agreement; (2) an Employment and Purchase Agreement; and (3) a Non-Competition Agreement. The Asset Purchase Agreement contained dispute resolution procedures in Article IX of the document, as follows:

> **9.1 General.** In the event that any dispute should arise between the parties hereto with respect to any matter covered by this Agreement or any agreement, document, certificate or instrument issued under or otherwise relating thereto, including, without limitation, the Subordinated Notes, the Guaranties, the Employment Agreements, the Non-Compete Agreements and the Lease, the parties hereto shall resolve such dispute in accordance with the procedures set forth in this Article IX, except to the extent that particular issues described in such documents are made subject to other arbitration procedures more fully described therein (by way of example, such procedures appear in the Note with respect to the determination of the existence and amount of any deemed principal credit to be applied).
>
> **9.2 Consent of the Parties.** In the event of any dispute between the parties with respect to any matter covered by this Agreement, the parties shall first use their best efforts to resolve such dispute among themselves. If the parties are unable to resolve the dispute within 30 calendar days after the commencement of efforts to resolve the dispute, the dispute will be submitted to arbitration in accordance with this Article IX.
>
> **9.3 Arbitration.** A party shall submit any matter referred to in Section 9.1 hereof to arbitration by notifying the other parties hereto, in writing, of such dispute. . . .

Each of the other contracts incorporate this arbitration provision by reference. The Employment and Purchase Agreement contains a "dispute resolution" section, which provides that "[e]xcept where particular arbitration provisions contained herein specify procedures for resolution of particular disputes, the dispute resolution provisions contained in Article IX of the Asset Purchase Agreements are made applicable to disputes arising under this Agreement." Similarly, the Non-Competition Agreement also provides that "[t]he dispute resolution provisions contained in Article IX of the Asset Purchase Agreements are made applicable to disputes arising under this Agreement."

Disputes arose between the parties, and Nadkarni brought suit against Maverick Engineering, Inc., and Robert L. Kovar for declaratory relief regarding their respective obligations under the Employment and Purchase Agreement and the Non-Competition Agreement, breach of the Asset Purchase Agreements, defamation, and business disparagement. Maverick filed a motion requesting arbitration of some, but not all, of Nadkarni's claims. The order issued by the trial court grants, in part, and denies, in part, relator's motion to compel arbitration. The order reads, in pertinent part:

> IT IS ORDERED, ADJUDGED AND DECREED that Defendants' Motion is GRANTED in favor of arbitration as to Plaintiff's breach of contract claims pertaining to non-payment under the Asset Purchase Agreement;

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED Defendants' Motion is GRANTED in favor of arbitration as to those claims related to usurpation of corporate opportunities insofar as those claims relate to the Employer and Purchase Agreement.

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED Defendants' Motion is DENIED as to Plaintiff's claims pertaining to the validity and enforceability of the Non-Competition Agreement between Plaintiff Govind Nadkarni and Defendant Maverick Engineering, Inc. Said claims are not abated and are properly before this Court.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the tort claims asserted against Defendants are not abated and are properly before this Court.

By petition for writ of mandamus and by appeal, Maverick contends that the trial court erred in refusing to refer the issues pertaining to the validity and enforceability of the parties' Non-Competition Agreement to binding arbitration.[1]

## II. FEDERAL ARBITRATION ACT OR TEXAS ARBITRATION ACT

The trial court's order did not specify whether the arbitration agreement in this case was governed by the Federal Arbitration Act ("FAA") or the Texas Arbitration Act ("TAA"). *See* 9 U.S.C. §§ 1-16 (1999) (FAA); TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.001-.098 (Vernon 1997 and Supp. 2008) (TAA). Therefore, Maverick seeks review of the order denying arbitration both by mandamus and interlocutory appeal. *See Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 272 (Tex. 1992) (providing that litigants alleging entitlement to arbitration under the FAA and TAA must pursue parallel proceedings).

The FAA applies to transactions that involve commerce. *See* 9 U.S.C. § 2 (2005). "Commerce" has been broadly defined and encompasses contracts relating to interstate commerce. *See In re Gardner Zemke Co.*, 978 S.W.2d 624, 626 (Tex. App.–El Paso 1998, orig. proceeding). As defined by the FAA, "interstate commerce" is not limited to the interstate shipment of goods, but includes all contracts "relating to" interstate commerce. *In re FirstMerit Bank*, 52 S.W.3d 749, 754 (Tex. 2001) (orig. proceeding); *Lost Creek Mun. Util. Dist. v. Travis Indus. Painters, Inc.*, 827 S.W.2d 103, 105 (Tex. App.–Austin 1992, writ denied). Further, the word "involving" in the FAA is construed broadly and is the functional

---

[1] Maverick does not complain of the trial court's order insofar as it does not require arbitration of Nadkarni's tort claims; and accordingly, we do not address these issues herein.

4

equivalent of "affecting," signaling Congress's intent to exercise its Commerce Clause power to the fullest extent. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 272-74, 276-78 (1995); *Wee Tots Pediatrics, P.A. v. Morohunfola*, 268 S.W.3d 784, 789-790 (Tex. App.–Fort Worth 2008, no pet.). The FAA does not require a substantial effect on interstate commerce; rather, it merely requires commerce to be involved or affected. *See L & L Kempwood Assocs., L.P. v. Omega Builders, Inc. (In re L & L Kempwood Assocs., L.P.),* 9 S.W.3d 125, 127 (Tex. 1999) (combined appeal & orig. proceeding) (noting that the FAA "extends to any contract affecting commerce, as far as the Commerce Clause of the United States Constitution will reach").

Nadkarni contends that there is no evidence that "interstate commerce has been triggered other than a reference to language contained in the contested agreement, which shows nothing more than that Maverick sought to restrict Nadkarni's activities even outside the state." We disagree. This matter is covered by the FAA and is subject to mandamus review. The Asset Purchase Agreement is between, among others, a Texas corporation as "seller" and a Delaware corporation as "buyer." *See, e.g., L & L Kempwood*, 9 S.W.3d at 127 (noting that parties to the contract resided in different states and therefore, the contract involved interstate commerce); *Transcore Holdings, Inc. v. Rayner*, 104 S.W.3d 317, 320 (Tex. App.–Dallas 2003, pet. denied) (finding FAA applied because case involved a Delaware corporation that purchased all of the stock of a Texas corporation, the stockholders were Texas residents, and the parties to the agreement were located in three separate states). The Asset Purchase Agreement contains a "non-competition" clause, separate and apart from the Non-Competition Agreement, which, for a period of seven

5

years, prohibits seller from certain actions within Texas, Louisiana, Oklahoma, New Mexico, Mississippi, Alabama, Florida, Georgia, South Carolina, and North Carolina. It further prohibits seller from obtaining "prohibited business" from "anywhere within the United States." The Non-Competition Agreement itself contains similar language. Under these circumstances, the contract involves, affects, or relates to interstate commerce, and accordingly, is subject to the FAA. *See Morohunfola*, 268 S.W.3d at 789-790.

When a trial court erroneously denies a motion to arbitrate under the FAA, mandamus is the appropriate remedy. *In re Haliburton Co.*, 80 S.W.3d 566, 573 (Tex. 2002) (orig. proceeding); *see* 9 U.S.C.A. § 4 (2005) (providing, in part, that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement"); *Nabors Drilling USA, LP v. Carpenter*, 198 S.W.3d 240, 246 (Tex. App.–San Antonio 2006, orig. proceeding). Accordingly, we consider the merits of Maverick's petition for writ of mandamus.[2]

## III. STANDARD OF REVIEW

To be entitled to mandamus relief, a petitioner must show that the trial court clearly abused its discretion and that the relator has no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding) (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding)); *see In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 462 (Tex. 2008) (orig. proceeding). We may not

---

[2] Given our conclusion that the FAA governs this matter and it is subject to review by mandamus, we hereby dismiss as moot Nadkarni's motion to dismiss the appeal for want of jurisdiction based on an alleged late notice of appeal.

substitute our judgment for that of the trial court with respect to the resolution of factual issues or matters within the trial court's discretion. *Walker*, 827 S.W.2d at 839-40. The relator must show that the trial court could reasonably have reached only one decision. *Id.* The reviewing court cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Id.* With respect to the trial court's decision on legal issues, our review is much less deferential. *Id.* at 840. A trial court has no discretion in determining what the law is or applying the law to the facts. *Id.* Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Id*.

## IV. VALIDITY AND SCOPE

A party seeking to compel arbitration by a writ of mandamus must: (1) establish the existence of a valid agreement to arbitrate under the FAA; and (2) show that the claims in dispute are within the scope of the agreement. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). "Whether a valid arbitration agreement exists is a legal question subject to de novo review." *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (orig. proceeding). In determining the validity of agreements to arbitrate which are subject to the FAA, we generally apply state-law principles governing the formation of contracts. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). If the trial court finds there is a valid agreement to arbitrate, the burden shifts to the party opposing arbitration to prove his defenses. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

7

Once a valid agreement to arbitrate has been established, the court must then determine whether the arbitration agreement covers the nonmovants' claims. *FirstMerit Bank, N.A.*, 52 S.W.3d at 753. To determine whether an existing arbitration agreement covers a party's claims, a court must "focus on the complaint's factual allegations rather than the legal causes of action asserted." *Id.* at 754. Federal policy embodied in the FAA favors agreements to arbitrate, and courts must resolve any doubts about an arbitration agreement's scope in favor of arbitration. *Id.* at 753. If the arbitration agreement encompasses the claims and the party opposing arbitration has failed to prove its defenses, the trial court has no discretion but to compel arbitration and stay its own proceedings. *Id*. at 753-54; *D.R. Horton, Inc. v. Brooks*, 207 S.W.3d 862, 866-67 (Tex. App.–Houston [14th Dist.] 2006, no pet.); *Feldman/Matz Interests, L.L.P. v. Settlement Capital Corp.*, 140 S.W.3d 879, 883 (Tex. App.–Houston [14th Dist.] 2004, no pet.).

A contract may validly and expressly incorporate by reference arbitration language of another referenced document. *See D. Wilson Constr. Co.*, 196 S.W.3d at 781. A contractual term is not rendered invalid merely because it exists in a document incorporated by reference, and "arbitration-related language is no exception to this rule." *See id.* In the instant case, the Non-Competition Agreement provides that "[t]he dispute resolution provisions contained in Article IX of the Asset Purchase Agreements are made applicable to disputes arising under this Agreement." This statement informed and alerted Nadkarni that the Non-Competition Agreement incorporated an agreement to arbitrate that was contained in the Asset Purchase Agreement. *See In re Dallas Peterbilt, Ltd., L.L.P.*, 196 S.W.3d 161, 162-63 (Tex. 2006) (orig. proceeding); *In re McKinney*, 167 S.W.3d 833,

8

835 (Tex. 2005) (orig. proceeding). By signing a contract, a party is presumed to have read and understood its contents. *See Prudential Co. of Am.*, 148 S.W.3d at 134. Accordingly, Maverick met its initial burden of establishing that a valid arbitration agreement exists. *See, e.g., UBS Fin. Servs. v. Branton*, 241 S.W.3d 179, 189 (Tex. App.–Fort Worth 2007, orig. proceeding).

Nadkarni alleges that the Non-Competition Agreement itself is invalid, and accordingly, disputes concerning that agreement should not be referred to arbitration. As recently explained by the Texas Supreme Court, there are two types of challenges to an arbitration provision: (1) a specific challenge to the validity of the arbitration agreement or clause, and (2) a broader challenge to the entire contract, either on a ground that directly affects the entire agreement, or on the ground that one of the contract's provisions is illegal and renders the whole contract invalid. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 2009 Tex. LEXIS 28, at *18 (Tex. Feb. 13, 2009) (orig. proceeding). A court may determine the first type of challenge, but a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator. *See id.*

The case now before us presents a challenge of the second type because Nadkarni is alleging that the Non-Competition Agreement is, inter alia, unconscionable and invalid in its entirety, but he is not specifically challenging the arbitration clause. Unless a challenge is to the arbitration clause or arbitration agreement itself, the question of a contract's validity is for the arbitrator and not the courts. *See id.* at *22-23. Accordingly, Nadkarni's challenge to the validity of the Non-Competition Agreement itself must be determined by arbitration, and we do not address it. *See id.*

9

Maverick has established a valid agreement to arbitrate, and accordingly, we must now determine whether the arbitration agreement covers Nadkarni's claims. *FirstMerit Bank, N.A.*, 52 S.W.3d at 753. There is a presumption favoring arbitration, which generally requires that we resolve doubts as to the scope of the agreements in favor of coverage. *See id.* at 753-54. Thus, a court should not deny arbitration "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute." *In re Dillard Dep't Stores, Inc.*, 186 S.W.3d 514, 515-16 (Tex. 2006) (orig. proceeding) (per curiam). The presumption of arbitrability is particularly applicable where the scope of the clause is broad, such as "arbitration of any dispute arising between the parties," or "any controversy or claim arising out of or relating to the contract thereof," or " any controversy concerning the interpretation, performance or application of the contract." *See McReynolds v. Elston (In re McReynolds)*, 222 S.W.3d 731, 740 (Tex. App.–Houston [14th Dist.] 2007, no pet.) (combined appeal & orig. proceeding) (citations omitted).

The Asset Purchase Agreement requires arbitration of "any dispute . . . between the parties hereto with respect to any matter covered by this Agreement or any agreement, document, certificate or instrument issued under or otherwise relating thereto, including, without limitation, the Subordinated Notes, the Guaranties, the Employment Agreements, the Non-Compete Agreements and the Lease." The Non-Competition Agreement requires arbitration of "disputes arising under this Agreement." Nadkarni's claims regarding the validity or lack thereof of the Non-Competition Agreement fall within the broad scope of the arbitration agreement at issue in this case. *See id.*

10

## V. CONCLUSION

We conclude that the trial court erroneously denied Maverick's motion to compel arbitration as to Nadkarni's claims pertaining to the validity and enforceability of the Non-Competition Agreement. We dismiss Maverick's interlocutory appeal in cause number 13-09-00119-CV. We conditionally grant Maverick's writ of mandamus in cause number 13-09-00142-CV and direct the trial court to order these claims to arbitration under the FAA. The writ of mandamus will issue only if the trial court fails to comply.

_____
GINA M. BENAVIDES,
Justice

Memorandum Opinion delivered and
filed this the 5th day of June, 2009.

11