CV1-017 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-017-CV





ROGER VALLES AND ANN VALLES,



 APPELLANTS


vs.




TEXAS COMMISSION ON JAIL STANDARDS, ET AL.,



 APPELLEES



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT



NO. 444,497, HONORABLE BOB JONES, JUDGE PRESIDING



 




PER CURIAM


 Roger and Ann Valles appeal the summary judgment rendered against them in their
suit against the Texas Commission on Jail Standards and Robert Viterna, the Commission's
Executive Director. Roger and Ann Valles are the parents of Michael Valles, who committed
suicide in the Tom Green County Jail in San Angelo. The Valleses brought a class action suit for
injunctive and declaratory relief and a suit for damages under the Texas Wrongful Death Act, the
Survival Statute, and the Tort Claims Act. (1) We will affirm the judgment of the trial court.



Background


 At the time of his confinement in the Tom Green County Jail, Michael Valles had
a history of mental illness and had previously attempted suicide. On June 2, 1986, while
incarcerated, he slashed his wrists with a piece of sharp metal. He was taken to a hospital for
stitches and then transferred to an infirmary jail cell, constructed of solid cement walls and a solid
steel door with only a small window. The three padded cells designed to house suicidal inmates
had been unfit for use since 1982. Video monitors, although available in other parts of the jail,
were not available to monitor this cell. On June 10, he called the jailers and requested a pair of
pliers so he could pull out his stitches. On June 13, he committed suicide by hanging himself with
material torn from a pair of jail overalls. 

 In the several years preceding Michael Valles's death, five suicides had occurred
and three attempts had been made at that jail. The Commission had cited the jail for violations
of its standards delineating adequate care for detainees exhibiting suicidal tendencies, for example,
the failure to repair the padded cells. A June 27, 1983, inspection report noted that some shifts
were inadequately staffed, that two of the "violent cells" were not used, and that there had been
a suicide in the previous year. The report threatened a "notice of noncompliance," which was
issued on July 15, 1983.

 The Valleses brought a class action suit for injunctive and declaratory relief and
a suit for damages under the Texas Wrongful Death Act, the Survival Statute, and the Tort Claims
Act, contending that appellees' acts were systematically negligent, grossly negligent, reckless, and
violated the Texas Constitution. The Valleses argue that appellees owed Michael a duty because
they had particularized knowledge of life-endangering conditions with respect to this jail; they had
the legal ability to take preventive measures and had that ability to a greater extent than other
officials; and they had the actual means at their command to eliminate or diminish the life-endangering situation. In addition, the Valleses sought class declaratory relief, challenging
appellees' official policies and interpretations of the statute under which the Commission
functions. They also sought class injunctive relief, requiring appellees to refrain from deliberate
and systematic conduct that violated the legal rights of current and future prisoners in the Tom
Green County Jail.

 Appellees filed a plea to the jurisdiction, which was granted, while giving
appellants thirty days to replead. After appellants repleaded, appellees moved for summary
judgment, which was granted. In two points of error, appellants contend that the trial court erred
in holding: (1) the Commission had no duty under state law to promulgate minimum standards,
to inspect county jails to detect violations, and to enforce the standards; and (2) the Commission
had no duty to Michael Valles under the Texas constitution.



Summary Judgment


 When we review a summary judgment we apply the following standards:



1. The movant for summary judgment has the burden of showing that there is no
genuine issue of material fact and that it is entitled to judgment as a matter of
law.


2. In deciding whether there is a disputed material fact issue precluding summary
judgment, evidence favorable to the non-movant will be taken as true.


3. Every reasonable inference must be indulged in favor of the non-movant and
doubts resolved in his favor.



Nixon v. Mr. Property Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985).

 When a defendant moves for summary judgment because plaintiff failed to state a
cause of action, based solely on plaintiff's pleadings, then all allegations, facts, and inferences in
the pleadings are taken as true and viewed in the light most favorable to the non-movant. Havens
v. Tomball Community Hospital, 793 S.W.2d 690, 691 (Tex. App. 1990, writ denied). A
defendant moving for summary judgment has the burden of showing that as a matter of law, the
plaintiff had no cause of action against him. Citizens First Nat'l Bank v. Cinco Explorations, 540
S.W.2d 292, 294 (Tex. 1976). The defendant-movant for summary judgment must establish as
a matter of law there is no genuine issue of material fact as to one or more of the essential
elements of the plaintiff's cause of action.

 The dispositive question on appeal is not whether the summary judgment proof
raises fact issues, but whether the summary judgment proof establishes as a matter of law that
there is no genuine issue of material fact. Gibbs v. General Motors Corp., 450 S.W.2d 827, 828
(Tex. 1970). In granting a summary judgment, the trial court is confined to the specific grounds
set forth in the motion. City of Houston v. Clear Creek Basin Authority, 589 S.W.2d 671, 677
(Tex. 1979). If the trial court's judgment does not specify the ground relied upon for its ruling,
the summary judgment must be affirmed if any of the theories advanced are meritorious. See,
e.g., Price v. Texas Employer's Ins. Ass'n, 782 S.W.2d 938, 942 (Tex. App. 1989, no writ). (2)



Jail Standards Commission


 The legislature created the Jail Standards Commission in 1975. 1975 Tex. Gen.
Laws, ch. 480, §§ 1-14, at 1278. Appellants rely on the language of the statute, the structure of
the statute, and the legislative history of the statute to support their position that appellees owed
a duty to Michael Valles. Appellants argue that the statute creates an elaborate and specific
regulatory administrative scheme, similar to enabling statutes for other administrative agencies. 
They conclude that this structure must then mean that the statute was not intended to create an
agency in which the director's duties were to be merely advisory or purely discretionary. Appellants also contend that the legislative history suggests that appellees owed
a duty to Michael Valles, arguing that the legislature created the commission in 1975 to relieve
individual counties from the large number of suits challenging county jail conditions as
unconstitutional that were then pending in federal courts.



Text of Statute

 Appellants contend that the plain language of the statute imposes a duty on
appellees to set standards, inspect facilities, and perform enforcement activities. The statute
establishing the Commission says:



(a) The commission shall:


 ( 1) adopt reasonable rules and procedures establishing minimum standards
for the construction, equipment, maintenance, and operation of county
jails;


 ( 2) adopt reasonable rules and procedures establishing minimum standards
for the custody, care and treatment of prisoners;

 

 ( 3) adopt reasonable rules establishing minimum standards for the number
of jail supervisory personnel and for programs and services to meet the
needs of prisoners;


 . . . .


 ( 8) require that the sheriff and commissioners of each county submit to the
commission . . . an annual report on the conditions in each county jail
within their jurisdiction, including all the information necessary to
determine compliance with state law, commission orders and the rules
adopted under this chapter;


 ( 9) review the reports . . . and require commission employees to inspect
county jails regularly to ensure compliance with state law, commission
orders, and rules and procedures adopted under this chapter; and


 (10) at least annually determine whether each county jail is in
compliance . . . .



Tex. Gov't Code Ann. § 511.009 (1990) (emphasis added). (3)

 The sections dealing with enforcement power say that the Commission shall grant
a period of not more than one year to remedy non-compliance, that it may grant a variance where
warranted, and that, in the event of noncompliance, the Commission "by order may prohibit
confinement of prisoners in the county jail." Tex. Gov't Code Ann. § 511.012 (1990) (emphasis
added). Instead of closing a county jail, the Commission "may bring an action in its own name
. . . ." Tex. Gov't Code Ann. § 511.014 (1990) (emphasis added). 

 We observe that, in setting out some of the Commission's functions, the legislature
used the word "shall," language usually construed as mandatory. Chisholm v. Bewley Mills, 287
S.W.2d 943, 945 (Tex. 1956); City of Dallas v. Vaughan, 750 S.W.2d 345, 347 (Tex. App.
1988); see generally 2B Sutherland Statutory Construction, § 57.11 (C. Sands ed., 5th ed. 1992,
Temporary Pamphlet). When providing methods of enforcement, however, the leglislature
employed the term "may," language usually construed as directory or permissive language. See
Sutherland, supra, § 57.03 at p. 7. When the legislature uses both mandatory and directory verbs
in the same statute, we may fairly infer that the legislature realized the difference in meaning, and
intended that the verbs used should have their ordinary meanings. Sutherland, § 57.11.

 The legislature could have drafted the statute to use "shall" in the enforcement
sections of the statute as well as in the standard-setting and reporting sections. It could have
required that the Commission shall either file suit or close a jail within a certain amount of time
from a triggering event. Instead, the statute, using the word "may," gives the Commission several
enforcement options. Therefore, the language of the statute supports an interpretation that the
Commissions's various enforcement powers are discretionary, not mandatory.



Structure of Statutes Dealing with County Jails

 Appellants also argue that the statute sets up, in detail, an administrative agency
and, therefore, the intent of the legislature must have been that the entity created have a function,
not that its powers were to be purely discretionary or advisory. However, the Commission is but
one part of the overall scheme for the management of prisons and prisoners in Texas. The
creation of the Commission did not divest counties of their authority over, and responsibility for,
county jails: "[t]he commissioners' court shall provide safe and suitable jails for the county." 
Tex. Loc. Gov't Code Ann. § 351.001 (1988). For example, if the Commission orders a jail
closed, the county, and not the Commission, is responsible for transferring the affected prisoners. 
Tex. Gov't Code Ann. § 511.012 (1990). The Commission has several severe enforcement
options available. It does not appear to have any lesser sanctions available to deal with day-to-day
administrative problems, for example, firing specific, poorly-performing employees. To imply
such powers over daily operations would interfere with the counties' continued authority from the
legislature to run the jails. It would be logical, given the extreme nature of the Commission's
enforcement powers, for those powers to be discretionary, in order to best apply them to remedy
a specific situation without usurping the counties' power.



Legislative History

 The Valleses offer several items as "legislative history": a 1983 Annual Report
from the Commission stating that it was created in recognition of the necessity for the State of
Texas to regulate county jails and thus prevent federal court intrusion into state and local matters;
two fifth circuit cases expressing the belief that the creation of the Commission was an expression
by the Texas legislature of a strong commitment to improve conditions in Texas county jails (4); and
a 1979 letter written by then-governor Clements that the standards were written to provide
minimum constitutional protection.

 The State correctly points out that these items are not "legislative history" and that,
in any event, the statements represent aspirations for the Commission, not enforceable obligations. 
Ultimately, these statements simply are not useful in answering the question at hand. That the
Commission was formed to set standards, improve conditions, or end multi-county litigation does
not answer the issue before us: whether the Commission and Viterna failed to carry out a duty.



Federal Cases

 The Valleses assert that supervisory liability is a well-settled concept in federal law,
one they would have us apply under state law. In civil rights actions under § 1983, responsibility
may not be imposed through theories of vicarious liability or respondeat superior, but rather
liability is imposed exclusively upon persons who have participated in the wrongful acts. 42
U.S.C. A. § 1983 (1981) ("§ 1983"); Bush v. Viterna, 795 F.2d 1203, 1206 (5th Cir. 1986). 
Attempts to impose liability on a policy-maker usually have been based on the wrong being the
policy itself, that is, a causal nexus exists between an affirmative policy and the injury that then
creates direct liability. In situations such as the one before us, the claimed supervisory liability
is the failure of an official or official body to play a remedial or corrective role. In our case, the
Valleses would have us apply a theory of supervisory liability to the Commission for its failure
to act. They contend that federal cases that have involved the Commission have not squarely
addressed the issue and are not persuasive.

 In Bush v. Viterna, 795 F.2d 1203 (5th Cir. 1986), a § 1983 suit was brought
against the Commission and its director claiming liability to inmates of county jails because the
Commission failed to carry out its duty to promulgate minimum standards of construction,
maintenance, and operation for county jails. The opinion noted that the Commission was created
in an effort to remedy deficiencies in county jails in Texas. Id. at 1204. The opinion then noted
that at the time the Commission was created, the authority to supervise, direct, and control the
daily operation of each county jail rested with each county's elected sheriff, subject to the
superintending role of the county commissioners' court. Id. The court then stated that it did not
think that the statute or its legislative history suggested "an intent to oust the counties from their
historic role." Id. at 1205.

 The court then discusses the difference between the mandatory language used for
some of the Commission's activities, and the directory language used for giving the Commission
broad enforcement powers. Id. In the fifth circuit's opinion, the counties continued to be the
"jailer" responsible for the prisoners. Id. at 1206. The court declined to impose enforcement
duties on the Commission that the legislature withheld. Id. at 1210. See also Balli v. Haynes,
804 F.2d 306, 308 (5th Cir. 1986) (liability not imposed on Commission or director for alleged
civil rights violations; reiterates view that county officials are responsible for jail conditions).

 A case decided after the briefs were filed is also relevant. Alberti v. Sheriff of
Harris County, 937 F.2d 984 (5th Cir. 1991), cert. denied, 60 U.S.L.W. 3776 (U.S. May 19,
1992) (No. 91-1202). Alberti involves the long-running litigation over conditions in the Harris
County jail. In Alberti, Harris County claimed that its overcrowded jail was caused in large part
from felons awaiting transfer to state prisons. It sought to make the State, not the county,
responsible for the conditions in the Harris County jails. Alberti held the State of Texas jointly
responsible with the county because state law gives the State the responsibility for the confinement
of convicted felons, while making the sheriff the jailkeeper. Id. at 996. The court went on to
consider 1989 amendments to the Government Code, which identified the Texas Department of
Criminal Justice as the state agency with primary responsibility for the confinement, supervision
and rehabilitation of felons. Id. at 997. (5)

 The Alberti opinion contrasts this litigation with that in Bush, in which the
Commission was required to establish minimum standards for county jails and to review reports
of noncompliance, but had discretionary enforcement powers. The plaintiffs in Bush claimed that
the Commission legally caused constitutional wrongs it failed to prevent. Id. at 993-994. The
court noted that, in contrast, the Texas Department of Criminal Justice had an affirmative, state-law imposed duty to provide appropriate conditions of confinement for convicted felons. Id. See
also Ryan v. State, 860 F.2d 1199 (3rd Cir. 1988) (claim by New Jersey Department of
Corrections that responsibility for conditions in county jails was solely that of county rejected on
basis that an executive order issued by the governor in 1981 made the Department responsible
from that time forward because the order explicitly gave the agency the authority, in order to deal
with overcrowding, to designate the place of confinement of every inmate in the state regardless
of which governmental entity owned any particular institution); Adams v. Mathis, 458 F. Supp.
(M.D. Ala. 1978), aff'd, 614 F.2d 42 (5th Cir. 1980) (statutes gave state officials the explicit duty
to supervise and control all penal and correctional institutions).



Analysis


 In comparing the current case with cases involving federal claims based on theories
of supervisory liability over local jails, it is illuminating to note that liability was imposed in
situations in which the state officials had a governing statute or executive order explicitly giving
them authority to supervise and control local jails or certain categories of prisoners, as opposed
to general standard-setting and inspection authority. We think the fifth circuit opinion in Bush
is persuasive in its discussion of the interpretation of the statute and the relationship of local and
state officials.

 We also note that the statutes dealing with the Commission have been amended
since the time of the decision in Bush. We presume the legislature enacts statutes with complete
knowledge of the existing law and with reference to it. Acker v. Texas Water Commission, 790
S.W.2d 299 (Tex. 1990). A new section deals with complaints by prisoners and states that the
Commission shall refer a complaint from or related to a prisoner of a county or municipal jail to
the appropriate local agency for investigation and resolution and may perform a special inspection
of the facility to determine compliance with Commission requirements. Tex. Gov't Code Ann.
§ 511.0071 (Supp. 1992). Once again, the Commission's enforcement power is stated in
permissive terms. Once again, local government units retain power over the jail -- the
Commission shall refer complaints to them. Had the legislature disagreed with the interpretation
in Bush, it had the opportunity to clarify its view of the Commission's powers.

 Based on the language of the statute and the overall structure of the system for
governing jails in Texas, we determine the Commission had no duty to Roger Valles. We
conclude that appellees have conclusively negated an element of plaintiffs' case under any pleaded
cause of action, that is, the existence of a duty. Our analysis disposes of both points of error. 
We need not decide if a "constitutional tort" exists in Texas. If appellees have no duty in tort,
whether the source of the cause of action for a particular tort is the Texas constitution, the United
States Constitution, or Texas statutory or common law is irrelevant. We overrule points of error
one and two.

 The judgment of the trial court is affirmed.


[Before Chief Justice Carroll, Justices Aboussie and Kidd]

Affirmed

Filed: July 1, 1992

[Publish]
1.   Tex. Civ. Prac. & Rem. Code Ann §§ 71.001-.011 (1986) (wrongful death); Tex. Civ.
Prac. & Rem. Code Ann. § 71.021 (1986) (survival); Tex. Civ. Prac. & Rem. Code Ann.
§§ 101.001-.109 (1986 & Supp. 1992).
2. [2]  Although both parties state that the judge granted summary judgment on the basis of his
determination that neither appellee owed a duty to Michael Valles that could give rise to a cause
of action, we note that, in point of fact, the judgment itself simply states that the motion is
granted, without stating any grounds. The letter from Judge Hart referred to by the parties gave
grounds for granting the previous special exceptions and is not part of the judgment on the motion
for summary judgment.


 It is difficult to tell from the record of this case whether one or more than one ground is
advanced in the motion for summary judgment, as two different concepts are run together. It is
rather difficult to discern whether the State is arguing (1) absolutely no duty and therefore no
liability; or (2), as the State was performing a non-mandatory act, the Tort Claims Act waiver of
sovereign immunity does not apply, and there is no applicable waiver of sovereign immunity with
regard to any of their pleaded causes of action, or (3) both. 
3. [3]  The Government Code sections dealing with the Commission on Jail Standards were codified
as chapter 511 of the Government Code by 1989 Tex. Gen. Laws, ch. 212, § 2.01, at 964
(previously Tex. Rev. Stat. Ann. art. 5115.1 ). As the codification was non-substantive, and the
text of the relevant sections the same from the time of the events of this case to the codification
in the Government Code, the statutes will be cited to their current location in the Government
Code. 
4.   Smith v. Sullivan, 611 F.2d 1039 (5th Cir. 1980); Taylor v. Sterrett, 600 F.2d 1135 (5th
Cir. 1979).
5. [5]  We are discussing Bush and Alberti solely for their treatment of the role of the Commission
on Jail Standards. Our holding concerns the duties and liabilities of the Commission, not those
of the Texas Department of Criminal Justice.