# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00524-CV

---

**Appellants, City of McAllen, City of San Antonio, City of Dallas, City of Austin, City of El Paso, City of Plano, City of Garland, City of Irving, City of Amarillo, City of Grand Prairie, City of Brownsville, City of McKinney, City of Waco, City of College Station, City of Sugar Land, City of Mission, City of Pharr, Town of Flower Mound, City of Rowlett, City of Bedford, City of San Marcos, City of Coppell, City of Huntsville, City of Duncanville, City of Hurst, City of Weslaco, City of San Benito, City of Watauga, City of Alamo, City of Midlothian, City of Highland Village, City of Seagoville, City of Hewitt, City of Alton, City of Hidalgo, City of Red Oak, City of Boerne, City of Webster, City of Roma, City of Rockport, City of Granbury, Town of Fairview, City of La Feria, City of Bastrop, City of Roanoke, City of Lucas, City of West Columbia, City of Hallsville, City of Balcones Heights, City of South Padre Island, City of Olmos Park, City of Grapeland, City of Aurora, City of Escobares, City of China Grove, City of Lindsay, Town of Westlake, and City of Simonton// Cross-Appellant, The State of Texas**

**v.**

**Appellee, The State of Texas// Cross-Appellees, City of McAllen, City of San Antonio, City of Dallas, City of Austin, City of El Paso, City of Plano, City of Garland, City of Irving, City of Amarillo, City of Grand Prairie, City of Brownsville, City of McKinney, City of Waco, City of College Station, City of Sugar Land, City of Mission, City of Pharr, Town of Flower Mound, City of Rowlett, City of Bedford, City of San Marcos, City of Coppell, City of Huntsville, City of Duncanville, City of Hurst, City of Weslaco, City of San Benito, City of Watauga, City of Alamo, City of Midlothian, City of Highland Village, City of Seagoville, City of Hewitt, City of Alton, City of Hidalgo, City of Red Oak, City of Boerne, City of Webster, City of Roma, City of Rockport, City of Granbury, Town of Fairview, City of La Feria, City of Bastrop, City of Roanoke, City of Lucas, City of West Columbia, City of Hallsville, City of Balcones Heights, City of South Padre Island, City of Olmos Park, City of Grapeland, City of Aurora, City of Escobares, City of China Grove, City of Lindsay, Town of Westlake, and City of Simonton; and Cross-Appellee, City of Houston**

---

### FROM THE 353RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-17-004766, THE HONORABLE MARIA CANTÚ HEXSEL, JUDGE PRESIDING

---

# **O P I N I O N**

This appeal arises from a suit for declaratory judgment in which Appellants and Cross-Appellees City of McAllen et al., 58 Texas cities (the McAllen Plaintiffs), later joined by Intervenor-Plaintiff and Cross-Appellee City of Houston (collectively, the Cities), challenged the validity of a pair of related statutes affecting the fees municipalities may charge certain utility providers for use of public rights-of-way.[1]  Specifically, the Cities sought a declaration that SB 1004 and SB 1152, enacted in 2017 and 2019, respectively, are unconstitutional and further sought a permanent injunction against the implementation and enforcement of those provisions on the ground that they violate the Texas Constitution's gift clauses.  *See* Tex. Const. arts. III § 52, XI § 3; Act of May 25, 2017, 85th Leg., R.S. ch. 591, 2017 Tex. Gen. Laws 1598, 1598-1609 (codified at Tex. Loc. Gov't Code §§ 284.001-.381) (SB 1004); Act of May 21, 2019, 86th Leg., R.S. ch. 980, 2019 Tex. Gen. Laws 2819-20 (current version at Tex. Loc. Gov't Code § 283.051(d)–(f), and Texas Util. Code § 66.005(d)–(f)) (SB 1152).  On cross-motions for partial summary judgment and summary judgment, respectively, the trial court granted the Cities' motions for partial summary judgment holding SB 1152 unconstitutional on its face and as applied to the City of Houston and granted in part the State of Texas's (State's) motion for

---

[1]  The McAllen Plaintiffs are the City of McAllen, City of San Antonio, City of Dallas, City of Austin, City of El Paso, City of Plano, City of Garland, City of Irving, City of Amarillo, City of Grand Prairie, City of Brownsville, City of McKinney, City of Waco, City of College Station, City of Sugar Land, City of Mission, City of Pharr, Town of Flower Mound, City of Rowlett, City of Bedford, City of San Marcos, City of Coppell, City of Huntsville, City of Duncanville, City of Hurst, City of Weslaco, City of San Benito, City of Watauga, City of Alamo, City of Midlothian, City of Highland Village, City of Seagoville, City of Hewitt, City of Alton, City of Hidalgo, City of Red Oak, City of Boerne, City of Webster, City of Roma, City of Rockport, City of Granbury, Town of Fairview, City of La Feria, City of Bastrop, City of Roanoke, City of Lucas, City of West Columbia, City of Hallsville, City of Balcones Heights, City of South Padre Island, City of Olmos Park, City of Grapeland, City of Aurora, City of Escobares, City of China Grove, City of Lindsay, Town of Westlake, and City of Simonton.

summary judgment as to its arguments concerning the constitutionality of SB 1004. For the reasons set forth below, we affirm in part and reverse and remand in part.

# I.
# BACKGROUND

Of relevance here are three statutory provisions governing the fees municipalities may charge utilities for different categories of right-of-way access. First, originally enacted in 1999 following federal and state deregulation of the telecommunications industry, Chapter 283 of the Texas Local Government Code established the current method for compensating municipalities for the use of public rights-of-way by telecommunications providers and requires that providers pay a fee in an amount determined by the Public Utility Commission according to an annually adjusted, per-access-line rate based initially on the franchise fees municipalities had received in the year immediately preceding the chapter's enactment. *See* Tex. Loc. Gov't Code §§ 283.051, .055.

Second, Chapter 66 of the Utilities Code, added in 2005, governs fees payable by cable service providers and requires that a provider pay each municipality in which it provides cable or video service a franchise fee of five percent of gross revenues derived from the provision of those services in the municipality. *See* Tex. Util. Code § 66.005.

Third, Chapter 284 of the Local Government Code, added by SB 1004 in 2017, governs fees payable by wireless service providers for the installation in public rights-of-way of small, six-cubic-foot "network nodes," defined as equipment associated with wireless communication, such as radio transceivers or antennas, installed at fixed locations to enable wireless communication between a user's device and a communications network. Tex. Loc. Gov't Code § 284.001(a)(12). With exceptions not relevant here, Chapter 284 bars a

municipality from prohibiting, regulating, or charging for the installation or collocation of network nodes in a public right-of-way beyond an annually adjusted rate originally set at $250 per node per annum. *Id*. §§ 284.053, .151. According to affidavit testimony by a wireless industry analyst attached in support of the McAllen Plaintiffs' petition, the fair market value for network node installation in a municipal right-of-way in Texas prior to SB 1004's enactment ranged from $1,500 to $2,500 per year, such that, under current law, municipalities are limited to between 10 and 16.7% of the fair market value of the access provided.

In 2019, the legislature enacted SB 1152, which made parallel amendments to Chapter 283 of the Local Government Code and Chapter 66 of the Utilities Code to provide that a provider of both telecommunications and cable services, together with any member of the provider's "affiliated group" as defined by Section 171.0001 of the Texas Tax Code, need only pay the greater of the sums of compensation otherwise due from the provider and any member of its affiliated group as computed under those chapters:

> A certificated telecommunications provider is not required to pay any compensation under [the right-of-way fee provision] for a given calendar year if the provider determines that the sum of the compensation due from the provider and any member of the provider's affiliated group to all municipalities in this state under [the right-of-way fee provision] is less than the sum of the fees due from the provider and any member of the provider's affiliated group to all municipalities in this state under Section 66.005, Utilities Code [the cable franchise fee statute].

*Id*. § 283.051(d).

> A holder of a state-issued certificate of franchise authority is not subject to the fee imposed under [the franchise fee provisions] for a given calendar year if the holder determines that the sum of fees due from the holder and any member of the holder's affiliated group to all municipalities in this state under [the franchise fee provision] is less than the sum of the compensation due from the holder and any member of the holder's affiliated group to all municipalities in this state under

4

Section 283.051, Local Government Code [the telecommunications right-of-way fee statute].

Tex. Util. Code § 66.005(d).

As a result, providers formerly required to pay both the right-of-way fee under Chapter 283 of the Local Government Code and the franchise fee under Chapter 66 of the Utilities Code are now required to pay only the greater of the two, while continuing to enjoy access to the rights-of-way under both chapters. For example, according to affidavit testimony attached to the City of Houston's motion for partial summary judgment, one telecommunications provider that had paid the City of Houston more than $10 million for right-of-way access in 2019 paid no such fees in 2020 because it or its affiliate had paid more in cable/video franchise fees that year, despite continuing to access the right-of-way for telecommunications purposes.

## II.
## PROCEDURAL HISTORY

On August 31, 2017, the McAllen Plaintiffs filed their original petition in the district court of Travis County, Texas, initially naming as defendants the State, Governor Greg Abbott, and Attorney General Ken Paxton, and seeking declaratory and injunctive relief as to SB 2004 under the Uniform Declaratory Judgments Act. *See* Tex. Civ. Prac. & Rem. Code § 37.001-.011. Specifically, the McAllen Plaintiffs sought a declaration that SB 2004 was unconstitutional on its face and sought a temporary and permanent injunction as to its implementation and enforcement.

During the pendency of the lawsuit, the legislature on May 21, 2019, enacted SB 1152. On November 1, 2019, the City of Houston filed a petition in intervention, seeking a declaration that both SB 1004 and SB 1152 were unconstitutional as applied to the City of

5

Houston. On February 14, 2020, the McAllen Plaintiffs filed a fourth amended petition to add a facial challenge to SB 1152.

On June 2, 2021, the McAllen Plaintiffs and the City of Houston both filed motions for partial summary judgment as to SB 1152.[2] On August 11, 2021, the State—by then the lone remaining defendant—filed a traditional motion for summary judgment as to both SB 1004 and SB 1152. The State did not attach evidence in support of its motion. The parties exchanged responsive briefing, and, following a hearing on June 26, 2022, the trial court rendered a final judgment in which it granted the Cities' motions for partial summary judgment as to SB 1152 and granted in part the State's motion as to SB 1004. All parties appealed.

## III.
## DISCUSSION

**SB 1004**

Appellants, the McAllen Plaintiffs, raise three issues on appeal: whether the $250 limit on fees for network node installation imposed by SB 1004 (Section 284.053 of the Texas Local Government Code) potentially amounts to an unconstitutional grant of public money or other thing of value in violation of the Texas Constitution's gift clauses, especially article III, Section 52(a); whether, in determining the answer to the foregoing question, the difference between the value of the access granted and the consideration paid to the municipality is a material fact; and whether the district court erred in granting summary judgment in light of the existence of a material fact.

---

[2] The McAllen Plaintiffs continued to challenge the legislation on its face, whereas the City of Houston advanced an as-applied theory; otherwise, the Cities were entirely aligned. Except where otherwise indicated, the facial/as-applied distinction is immaterial to our analysis and may be disregarded.

Appellee, the State, reframes the issues as (1) whether the Texas Constitution requires that fair market value be considered in determining whether the fee charged for a public good is sufficient to avoid falling afoul of the gift clauses, and (2) whether, even assuming the grant of right-of-way access to be a gift, SB 1004 is nevertheless constitutional because it is for a public purpose. These arguments are addressed in turn.

### Summary Judgment Standard

We review the trial court's decision on a motion for summary judgment de novo. *Brooks v. Acosta*, 581 S.W.3d 485, 487 (Tex. App.—Austin 2019, no pet.) (citing *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013)). Traditional summary judgment is proper only if the moving party shows that no genuine issue of material fact exists, and it is entitled to judgment as a matter of law. *Id.*; *see also Wal-Mart Stores, Inc. v. Xerox State & Local Sols., Inc.*, 663 S.W.3d 569, 576 (Tex. 2023); Tex. R. Civ. P. 166a(c). Generally speaking, pleadings are not competent summary-judgment evidence, even if sworn or verified. *Weekley Homes, LLC v. Paniagua*, 646 S.W.3d 821, 827 (Tex. 2022). When a defendant moves for summary judgment based solely on the plaintiff's pleadings, all allegations, facts, and inferences in the pleadings are taken as true and viewed in the light most favorable to the non-movant. *Valles v. Texas Comm'n on Jail Standards*, 845 S.W.2d 284, 286 (Tex. App.—Austin 1992, writ denied). A summary judgment that does not specify the basis for the court's ruling may be affirmed only on "theories presented to the trial court and preserved for appellate review." *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004).

*Applicable Constitutional Provisions*

As noted above, the McAllen Plaintiffs argued that SB 1004, as codified in Chapter 284 of the Texas Local Government Code, and particularly Section 284.053 thereof, violates the gift clauses of the Texas Constitution, specifically relying on article III, section 52(a) and article IX, Section 3, which provide, in relevant part:

> [T]he Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever, or to become a stockholder in such corporation, association or company.

Tex. Const. art. III, § 52(a).

> No county, city, or other municipal corporation shall hereafter become a subscriber to the capital of any private corporation or association, or make any appropriation or donation to the same, or in anywise loan its credit; but this shall not be construed to in any way affect any obligation heretofore undertaken pursuant to law or to prevent a county, city, or other municipal corporation from investing its funds as authorized by law.

*Id.* art. XI, § 3

*TML-Borgelt Test*

In the years since it was decided, *Texas Municipal League Intergovernmental Risk Pool v. Texas Workers' Compensation Commission* has been the lead case in evaluating gift-clause disputes, setting forth a two-pronged analysis for the validity of grants of public money or other "thing of value" under those provisions. 74 S.W.3d 377, 383 (Tex. 2002) (*TML*). Specifically, the *TML* court "determined that section 52(a) does not prohibit payments to individuals, corporations, or associations so long as the statute requiring such payments:

(1) serves a legitimate public purpose; and (2) affords a clear public benefit received in return." *Id*. In turn, the "public purpose" prong itself has three requirements. For such statutes to be valid, the legislature must: "(1) ensure that the statute's predominant purpose is to accomplish a public purpose, not to benefit private parties; (2) retain public control over the funds to ensure that the public purpose is accomplished and to protect the public's investment; and (3) ensure that the political subdivision receives a return benefit." *Id*. at 384.

During the pendency of this appeal, the Texas Supreme Court refined the *TML* test in its recent opinion in *Borgelt v. Austin Firefighters Association, IAFF Local 975*, 692 S.W.3d 288, 301 (Tex. 2024). While expressly preserving *TML*'s substantive requirements, the court "consolidate[d]" its analytical framework into three "principles," holding that:

> [a] challenged expenditure satisfies § 52(a)'s Gift Clause when (1) the expenditure is not gratuitous but instead brings a public benefit; (2) the predominant objective is to accomplish a legitimate public purpose, not to provide a benefit to a private party; and (3) the government retains control over the funds to ensure that the public purpose is in fact accomplished.

*Id*. Accordingly, these principles guide our analysis.

### *Anti-Gratuity Requirement*

A significant point of disagreement between the State and the McAllen Plaintiffs may be subsumed under *Borgelt*'s first principle. Specifically, the parties advance differing conceptions of what constitutes a "gratuitous" expenditure. The State urges that "because there is . . . a $250 charge," access to the right-of-way cannot be gratuitous as a matter of law. The McAllen Plaintiffs, in contrast, argue that a transfer for nominal or less-than-adequate consideration may constitute a gratuity, and that the 10 to 16.7% of fair market value alleged to be at issue here is low enough to do so. The parties cite no case—and our own review of the

9

case law discloses none—that conclusively disposes of the question in either party's favor. That is, the State identifies no case in which consideration of 10% was deemed adequate, and the Cities identify none in which that amount was held to result in a gratuity. Nevertheless, for two reasons, we agree with the McAllen Plaintiffs.

First, while the State is correct that, as interpreted by the Texas Supreme Court, section 52(a) does not require that consideration be equal in value to the thing being conferred, the court has repeatedly indicated—including in both *TML* and *Borgelt*—that consideration must be "sufficient." *See id.* ("[t]here need be 'only sufficient—not equal—return consideration to render a political subdivision's paying public funds constitutional'"); *TML*, 74 S.W.3d at 384 (same) (both cases citing *Key v. Commissioners Ct. of Marion Cnty.*, 727 S.W.2d 667, 669 (Tex. App.—Texarkana 1987, no writ) ("where sufficient consideration exists, Article III, § 52(a) of the Texas Constitution would not be applicable")). The supreme court's use in these cases of the qualifier "sufficient" necessarily supposes the possibility that some nonzero consideration may be constitutionally *insufficient*.

Against this proposition, the State declines to articulate any real limiting principle or to rebut the Cities' contention that, under the State's reading of the law, consideration equal to "one cent on the dollar"—"[o]r even one-tenth of a cent" would defeat a finding of gratuity. Instead, the State quotes *City of Lubbock v. Phillips Petroleum Co.* for the proposition that, to be insufficient, consideration must be "so grossly inadequate as to shock the conscience, being tantamount to fraud," 41 S.W.3d 149, 161 (Tex. App.—Amarillo 2000, no pet.), and argues that, here, "there is no showing—or even any allegation—that the $250 fee was tantamount to fraud." But while such language may intuitively suggest something lower than 10% of fair market value, nothing in *Phillips Petroleum* unambiguously establishes the adequacy of 10% as a matter of

10

law.  Apparently no case holds that a $250 statutory fee constitutes sufficient consideration under the gift clause for a good potentially worth $2,500 if acquired in an arm's-length transaction.

Second, this issue is before us on appeal from the trial court's grant of summary judgment where the State attached no evidence to its motion, and we must therefore take the Cities' evidence as true.  *Valles*, 845 S.W.2d at 286.  In other words, we must assume for purposes of this appeal that the $250 statutory fee is indeed a mere 10 to 16.7% of fair market value for the right-of-way access, such that the Cities must prevail if we conclude either that such consideration is inadequate as a matter of law, or that the question of its adequacy raises an issue of material fact so as to defeat summary judgment.  We hold the latter.

Though the cases furnish incomplete guidance as to where to draw the line, we are persuaded that a line must be drawn and that it falls to the factfinder to do so—a position repeatedly endorsed in attorney-general opinions that, while not binding on us, are nevertheless "highly persuasive" and "entitled to careful consideration."  *Jones v. Williams*, 45 S.W.2d 130, 131 (Tex. 1931); *see also* Tex. Att'y Gen. Op. No. GA-0252 (2004) (opining that lease by college district may offend article III, section 52(a), if district "receives no or merely nominal return consideration"); Tex. Att'y Gen. Op. No. GA-0894 (2011) (deeming adequacy of consideration fact question).  Our conclusion here is bolstered by the *Borgelt* court's pairing of the anti-gratuity requirement with the public benefit requirement under its first principle, and the consequent implication that nonmonetary compensation in the form of a distinct benefit to the public may overcome otherwise apparently deficient consideration.  Such a determination would be more fact-intensive than a mere comparison of the fee to the fair market value of the access and is therefore an appropriate question for the trier of fact.

11

Having determined that a fact question exists as to the adequacy of consideration in this case, the question occurs as to whether we must reach the remaining elements of the *TML-Borgelt* test. The State would answer this question in the affirmative, citing this Court's decision in *Chisholm Trail SUD Stakeholders Group v. Chisholm Trail Special Utility District* for the proposition that the "not gratuitous" and "public purpose" tests are independent analyses, such that the legislation can pass constitutional muster under either test. No. 03-16-00214-CV, 2017 WL 2062258, at *5 (Tex. App.—Austin May 11, 2017, pet. denied) (mem. op.). Whether that be a fair reading of this Court's opinion in *Chisolm Trail* is immaterial, as it is flatly contradicted by the supreme court's more recent holding in *Borgelt*. As the *Borgelt* court explained in discussing the "anti-gratuity requirement," "[a] challenged expenditure . . . cannot escape characterization as an unconstitutional gift without surviving that threshold inquiry." *Borgelt*, 692 S.W.3d at 300. "But even if it does," the court continued, "there is more." *Id.* In other words, the *Borgelt* principles are conjuncts, not disjuncts. "If [a challenged expenditure] meets *all three principles*—public benefit, public purpose, and public control—then it does not violate the Gift Clause." *Id.* at 301 (emphasis added).

We hold that the trial court erred in granting summary judgment because the adequacy of consideration constitutes an issue of material fact, and we accordingly sustain the McAllen Plaintiffs' three issues on appeal.

**SB 1152**

As Cross-Appellant from the grant of partial summary judgment as to SB 1152, the State raises two issues: whether the Constitution requires "that each individual person or entity pay a separate fee for access to a public good," and whether the legislature has "discretion

12

in determining the method of calculating compensation for access to the public rights-of-way." As Cross-Appellees, the McAllen Plaintiffs propose a single issue, that is, whether exempting any entity that offers both telecommunications and cable services from one of the otherwise applicable fees for right-of-way access violates article III, section 52. Finally, the City of Houston proposes two issues, both stated conclusorily: whether SB 1152 violates the gift clause as applied to Houston, and whether it does so on its face.

To understand the contours of the final judgment from which the State appeals, it is necessary to examine the Cities' summary judgment motions below. In its motion to the trial court, the McAllen Plaintiffs made what is in essence a three-part argument, asserting that: (1) the Texas Constitution's gift clause, at article III, Section 52(a), prohibits the legislature from authorizing or requiring a municipality to grant a thing of value to any association or corporation; (2) access to municipal rights-of-way for the installation of cable and wires is essential to the provision of telecommunications, cable, and video services and is therefore a "thing of value" within the meaning of the gift clause; and (3) Section 283.051(d) of the Local Government Code and Section 66.005(d) of the Utilities Code both expressly grant access to municipal rights-of-way to certain associations or corporations for free, explicitly exempting those entities from otherwise generally applicable fees.[3] Similarly, the City of Houston's motion focused on the City's alleged harm, arguing that "Senate Bill 1152 is unconstitutional as applied to Houston because it forces Houston to give something of value, namely use of the public right-of-way, to an association (or entity) for free, for the association's profit and personal gain."

---

[3] The remainder of the McAllen Plaintiffs' motion was devoted mostly to attempts to rebut the State's anticipated counterarguments apparently based on previous briefing in the case.

13

*State's First Issue on Cross-Appeal*

In its first issue on cross-appeal, the State focuses most of its briefing on whether the legislature has the discretion to treat parent and subsidiary companies as an "affiliated group" for purposes of the right-of-way fee under Chapter 283 of the Local Government Code and the franchise fee under Chapter 66 of the Utilities Code. This framing does not dispose of the issue before us.

The Cities' position is that the exemptions afforded by Section 283.051(d) of the Local Government Code and Section 66.005(d) of the Utilities Code would offend the Constitution's gift clause regardless of the organizational structure of the person receiving the benefit of the exemption. In other words, the Cities challenge the constitutionality of exempting an individual, association, or corporation from one of the two access fees based solely on the fact that that individual, association, or corporation—*or* an affiliate thereof, within the meaning of Section 171.0001 of the Tax Code—was subject to the other fee. So understood, it matters not to the Cities, and still less to the judgment appealed from, whether that exemption is enjoyed by the same individual or entity that paid the other fee, or by another entity that is a member of the exempted entity's affiliated group.[4] In sum, the State in its Cross-Appellant's Brief simply fails to address the operative issue in this case.

Restated, the real issue is whether the legislature may, under the anti-gratuity requirement of the gift clauses as interpreted by *TML* and *Borgelt*, exempt a private entity accessing a public right-of-way for private profit or commercial gain from an otherwise

_____

[4] The McAllen Plaintiffs expressly note this in their Cross-Appellees' Brief, pointing out that "the constitutional violation does not depend on the fact that two separate, but affiliated, entities are involved," and maintaining that "[t]he violation would still exist if a company received the fee waiver because it offered both services itself rather than through separate subsidiaries."

14

applicable fee for such access solely on the ground that the entity or its affiliate is subject to another fee provision. We hold that it may not.

In reaching this conclusion, we need look no further than the plain text of the complained-of provisions. Section 283.051(d) of the Local Government Code states that a certificated telecommunications provider "is not required to pay any compensation" for its right of access if exempted under that subsection. Likewise, Section 66.005(d) of the Utilities Code expressly provides that a franchise holder "is not subject to the fee" if exempted. Thus, unlike in the context of SB 1004, discussed above, there is no need to determine the adequacy of consideration under these provisions because there *is no consideration*. Instead, a person or entity previously subject to both fees would, under SB 1152's provisions, for no other reason be exempt from the lesser of the two. The State cites no authority to support the validity of such a scheme under the gift clauses, and, as already noted, the authorities the State does cite focus on the largely unrelated proposition of whether—assuming such a scheme to be valid at all—it would be valid as applied to members of an affiliated group. Because we find no support for its validity in general, we need not reach the secondary issue of its application to affiliated groups, and the State's first issue on cross-appeal is overruled.

### State's Second Issue on Cross-Appeal

In its second issue on cross-appeal, the State argues that the "distinction between phone data and video data going through fiber-optic cables" in the right-of-way is "an outdated historical model," such that it is essentially redundant to charge a provider separately for each category of access. "Now that phone companies provide video services, and cable companies provide 'Voice-Over IP' phone services," the State argues, the "outdated logic" of maintaining

distinct access fees "no longer makes sense." In support of this argument, the State cites SB 1152's bill analysis for the proposition that "there is one 'thing of value' at issue here: 'the right to occupy the right-of-way'." Because there is only "one fiber-optic line buried under the streets or sidewalks that carries different kinds of data," SB 1152, in the State's view, simply ensures that the Cities "are paid once for having that line occupy space in the [right-of-way]—so that access has not been provided gratuitously."

The State's argument here is unavailing. As the McAllen Plaintiffs point out, SB 1152 has, for better or worse, left in place a fee structure that takes explicit account of the two different categories of access the State now argues are "outdated," with each category apparently constituting a "thing of value" as evidenced by the fact that telecommunications, cable, and video service providers have continued paying for such access up until SB 1152's enactment. We need not and do not reach the question of whether the legislature could, consistently with the Constitution, completely overhaul the use-specific fee structure that SB 1152 left largely intact. We need only decide whether, for purposes of the gift clauses, a person may be exempted from one such fee without thereby receiving a gratuity solely because the person is liable for payments under another such fee. To so hold would do violence to the concept of consideration, and we are directed to no authority that would compel such an anomalous result.

The State's second issue on cross-appeal is overruled.

## IV.
## CONCLUSION

Because we conclude that the trial court erred in granting summary judgment in favor of the State on the grounds raised in its motion for traditional summary judgment, we

16

reverse that portion of the trial court's judgment and remand the cause for further proceedings on that issue.  We affirm the remainder of the trial court's judgment in favor of the Cities.

_____

Edward Smith, Justice

Before Justices Baker, Kelly and Smith

Affirmed in Part; Reversed and Remanded in Part

Filed:   November 15, 2024